COBB, Judge.
Winn Dixie Stores, Inc. appeals from a final judgment resolving an indemnity dispute.
Downey suffered personal injuries in an incident which occurred in a Winn Dixie supermarket when cases of beer in a display fell on him. He sued Winn Dixie and Schenck, the beer distributor, alleging that Schenck was negligent in stacking the cases *1023 of beer too high and that Winn Dixie was negligent in failing to correct this dangerous condition on its premises.
Winn Dixie cross-claimed against Schenck for indemnity pursuant to a 1968 general public liability indemnity agreement. Schenck cross-claimed against Winn Dixie seeking common law indemnification and contribution. Ultimately, a settlement was reached between the plaintiff and defendants totaling $450,000.00. Schenck paid $405,-000.00 of this while Winn Dixie paid $45,-000.00.
A non-jury trial was held on the cross-claims and at the conclusion thereof the trial court found that the indemnity agreement was still in effect, but that the “Tied House Evil Statute,” section 561.42, Florida Statutes,[1] barred Winn Dixie from recovering from Schenck that portion of the judgment attributed to the negligence of Winn Dixie. The court determined Winn Dixie to be 35% at fault and Schenck to be 65% at fault and that the concurrent negligence of both parties caused Downey’s injuries. The court found the indemnity agreement to be severa-ble and that the portion which obligated Schenck to indemnify Winn Dixie for damages caused by Schenck’s negligence did not violate the Tied House Evil Statute and was enforceable. The court ordered Winn Dixie to reimburse Schenck $112,500 plus interest from the date of payment to the plaintiff. A final judgment totaling $129,780.00 in favor of Schenck and against Winn Dixie was entered.
Winn Dixie appeals and Schenck cross-appeals.
Statutes such as section 561.42(1) are aimed at the evil known as the “tied house” and their purpose is to prevent the integration of retail and wholesale outlets and to remove the retail dealer in intoxicating liquors from financial or business obligations to the wholesaler, with the exception of ordinary commercial credit for liquors sold. Pickerill v. Schott, 55 So.2d 716 (Fla.1951), cert. denied, 344 U.S. 815, 73 S.Ct. 9, 97 L.Ed. 634 (1952), quoting 48 C. J.S. Intoxicating Liquors, § 197. See also Hunter v. McKnight, 86 So.2d 434 (Fla.1956). As further explained in Musleh v. Fulton Distributing Co. of Florida, 254 So.2d 815, 817 (Fla. 1st DCA 1971):
The purpose of the Tied House Evil Law is to prohibit manufacturers, wholesalers, and distributors of alcoholic beverages from controlling retail outlets operated by licensed vendors through the granting, withholding or extension of credit, the lending of money, investment in the business of the retailer, the making of rebates or the giving of any other financial assistance. The purpose of the act is to protect not only the public interest but also the interest of retail vendors licensed under the provisions of the act.
We cannot agree with Winn Dixie’s argument that the trial court’s interpretation of the statute resulted in an unconstitutional impairment of contract for the simple reason that the statute herein at issue was first enacted in 1935, well before the indemnity agreement between the parties was executed in 1968. The constitutionality of section 561.42 was upheld in Pickerill. We do agree, however, with Winn Dixie’s contention that the agreement in question is a simple contract for indemnity which does not violate the terms or the purpose of the Tied House Evil Statute. As pointed out by the Florida Supreme Court:
The purpose of this Act was to prevent monopoly or control by manufacturers or distributors of the retail outlets for the sale of intoxicating liquors.
Pickerill at 718.
The agreement between Winn Dixie and Schenck had nothing to do with the granting, withholding or extending of credit; the lending of money; investment in Winn Dixie’s business or the making of rebates; or assis *1024 tance of a vendor by a manufacturer via gifts or loans of money or property of any description. The instant agreement was a contract with mutual benefits. The statute simply does not cover this agreement.
In regard to the issue on cross-appeal, we cannot agree with Schenek that the parties had abandoned the indemnity agreement. Although Schenek asserts that Winn Dixie continued each year to provide it public liability indemnity agreements for its execution and that Schenek refused to execute such agreements, there is no record support for these contentions. Winn Dixie contends, without contradiction from Schenek, that the assertions are not of record. Furthermore, the 1968 indemnity agreement provides that it is to continue in effect until terminated at any time by notice given by either party. There is no evidence of any affirmative act by either party in regard to termination of the agreement. We find the trial court was correct in holding that the 1968 agreement was still in effect.
Accordingly, we reverse the judgment entered against Winn Dixie by the trial court.
REVERSED AND REMANDED.
GRIFFIN and THOMPSON, JJ., concur.

. Section 561.42(1), Florida Statutes, provides in relevant part:
(1) No licensed manufacturer or distributor of any of the beverages herein referred to shall have any financial interest, directly or indirectly, in the establishment or business of any vendor licensed under the Beverage Law; nor shall such licensed manufacturer or distributor assist any vendor by any gifts or loans of money of property of any description or by the giving of any rebates of any kind whatsoever.