# IN THE COURT OF APPEALS OF IOWA

No. 16-2083
Filed February 7, 2018

**NEW MIDWEST RENTALS, LLC, d/b/a DES MOINES VALERO #204**
**3733 EASTON BLVD.**
**DES MOINES, IOWA 50317**
　　Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF COMMERCE, ALCOHOLIC BEVERAGES DIVISION,**
　　Defendant-Appellee.
_____

　　Appeal from the Iowa District Court for Polk County, David N. May, Judge.

　　A convenience store sought judicial review after the alcoholic beverages division denied its request to renew its retail beer permit. **DISTRICT COURT DECISION VACATED IN PART; AGENCY DECISION AFFIRMED.**

　　Fred L. Dorr of Wasker, Dorr, Wimmer & Marcouiller, P.C., West Des Moines, for appellant.

　　Thomas J. Miller, Attorney General, and John R. Lundquist, Assistant Attorney General, for appellee.

　　Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VOGEL, Presiding Judge.**

New Midwest Rentals, LLC, d/b/a Des Moines Valero #204 (Valero), sought judicial review of the decision of the Iowa Department of Commerce Alcoholic Beverages Division (the ABD), which denied Valero's application to renew its retail beer permit. After the district court affirmed the ABD's action, Valero appeals, asserting (1) the district court erred in concluding the language of Iowa Code section 123.45 (2013) is unambiguous; (2) the ABD's interpretation of section 123.45 is irrational, illogical, and wholly unjustifiable; and (3) the ABD's denial of Valero's retail beer permit violates its equal protection and due process rights under both the Federal and Iowa Constitutions. While we agree the district court was wrong to declare the language of section 123.45 unambiguous, we do not find the ABD's interpretation of the statute irrational, illogical, or wholly unjustifiable. We likewise find no constitutional violation in the ABD's denial of Valero's retail beer permit. The agency's decision is affirmed.

## I. Background Facts and Proceedings.

Gerald Forsythe wholly owns the company New Midwest Rentals, and in 2010 the company purchased five convenience stores, which, after renovations were made, operate under the name Valero. The Valero store at issue in this case is number 204, located on Easton Boulevard in Des Moines. Store 204 was initially issued a class "C" beer permit on November 11, 2011. On April 25, 2012, the ABD received a request for a direct shipper wine license[1] for a company called Continental Vineyards, LLC, d/b/a Broken Earth Winery. Forsythe signed the

---

[1] This license allows a winery to ship its wine directly to consumers in Iowa. *See* Iowa Code § 123.187.

Broken Earth Winery application.[2]  When the ABD cross-referenced Forsythe's name, they discovered he also owned the Valero stores.  Forsythe was informed by the ABD that he may not hold both an ownership interest in a California winery and a business holding an Iowa retail beer permit.  Broken Earth Winery subsequently withdrew its direct shipper application.

Believing that Forsythe was actively working towards divesting his ownership interest of either the winery or the Valero stores, the ABD renewed the beer permit for store 204 in 2012.  In October 2013, store 204 filed its second renewal application, with Forsythe still listed as owner, and the ABD confirmed he still retained an ownership interest in Broken Earth Winery.  The ABD subsequently denied the renewal application for store 204 because of Forsythe's ownership interest in the Broken Earth Winery.

Valero appealed the decision of the ABD staff, and this matter was heard by an administrative law judge (ALJ) in a contested case proceeding in February 2014.  The ALJ concluded the renewal permit was properly denied on the basis of Iowa Code section 123.45, which the ALJ determined unambiguously stated individuals engaged in the business of manufacturing "alcoholic beverages, wine, or beer . . . shall not . . . directly or indirectly be interested in the ownership, conduct, or operation of the business of another licensee or permittee authorized under this chapter to sell at retail, nor hold a retail liquor control license or retail wine or beer permit."  *See* Iowa Code § 123.45.

---

[2] It was later determined Forsythe owns a 72.5% share of the limited liability companies that own Broken Earth Winery and is the chairman, chief executive officer, and president of Broken Earth.

Valero appealed the ALJ's decision, which was upheld by the ABD's administrator on October 3, 2014. The administrator concluded, "[T]he legislature forbid a liquor, wine or beer manufacturer or wholesaler from holding any retail license or permit, regardless of what type of alcoholic beverage the retailer sells." The administrator acknowledged "the probability of the California winery exerting an undue influence over the . . . Iowa retail beer permit[] at issue is questionable," but he noted "the legislature intended, through clearly enacted legislative language in Iowa Code [section] 123.45, to apply to such circumstances." The administrator also rejected Valero's claim that the ALJ should have used rules of statutory construction when interpreting section 123.45 because such rules are only employed when a statute is ambiguous, which the administrator determined section 123.45 was not.

Valero sought judicial review of the administrator's decision with the district court pursuant to Iowa Code section 17A.19. After a hearing, the district court issued a decision on March 12, 2015, concluding the language used by the legislature in section 123.45 was ambiguous:

> A reasonable person could interpret the meaning of this statute to prohibit *any* alcoholic beverage manufacturer to hold *any* type of alcoholic beverage retail permit, as the ABD held. . . . [Or] a reasonable person could also interpret the statute to only prohibit the dual ownership among the same type of alcoholic beverages (e.g. a wine manufacturer and wine retail permittee). At the very least, a reasonable person could be uncertain as to the meaning of the statute.

Because of the ambiguity in the statute, the 2015 judicial review decision remanded the matter so the ABD could apply the statutory rules of construction to determine which meaning the legislature intended.

Neither party appealed that decision, and the case proceeded back to the ABD for the application of the rules of statutory construction to section 123.45. On March 25, 2016, the ABD administrator issued its decision on remand, finding "[t]he legislature has directed the [ABD] to maintain strict separation between the retail, wholesale, and manufacturing of the industry through its enactment of Iowa Code chapter 123. The [ABD] concludes a rational and logical interpretation of Iowa Code [section] 123.45 (2015)[3] prohibits [Valero] from holding Iowa retail beer permits."

Valero once again sought judicial review of the agency's decision. In November 2016, a second district court judge affirmed the ABD decision, concluded section 123.45 was in fact unambiguous, and prohibited a wine manufacturer from holding a retail beer permit. Valero appeals from the 2016 judicial review decision.

## II. Scope and Standard of Review.

Judicial review of an agency's actions is governed by Iowa Code chapter 17A. *Neal v. Annette Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012). The district court reviews the agency's actions in an appellate capacity. *JBS Swift &*

---

[3] In issuing its remand decision, the ABD administrator considered and applied recent statutory amendments to section 123.45. Valero asserts the application of the 2015 amended language was in error. While we agree the proper code year to apply to this dispute is 2013, we conclude the ABD administrator's error was harmless. *See* Iowa Code § 17A.19(10) (noting in order to be entitled to relief under judicial review "the substantial rights of the person seeking judicial relief have [to be] prejudiced because [of] the agency action"). The amendment enacted in 2015 merely restructured the language in section 123.45 from a continuous paragraph into subsections and paragraphs. *Compare* Iowa Code § 123.45 (2013), *with* 2015 Iowa Acts ch. 30, § 42. The operative language of the section remained unchanged after the amendment; therefore, Valero is not entitled to relief based on this error because its substantial rights were not prejudiced by the agency's application of the wrong code year.

*Co. v. Hedberg*, 873 N.W.2d 276, 279 (Iowa 2015). "The district court may grant relief if the agency action has prejudiced the substantial rights of the petitioner, and the agency action meets one of the enumerated criteria contained in section 17A.19(10)(a) through (n)." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012) (citations omitted). We then apply the same standards of section 17A.19(10) to determine whether we reach the same result as the district court. *Id.* at 255–56. "If we reach the same conclusion as the district court, we affirm, but if we reach a different conclusion, we reverse." *Westling v. Hormel Food Corp.*, 810 N.W.2d 247, 251 (Iowa 2012).

The standard of review applicable to the agency's decision depends on the type of error alleged. *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 196 (Iowa 2010). "Because of the widely varying standards of review, it is 'essential for counsel to search for and pinpoint the precise claim of error on appeal.'" *Id.* (citation omitted). In this case, Valero challenges the agency's interpretation of Iowa Code section 123.45 to prohibit the renewal of its beer permit in light of Forsythe's ownership interest in a winery. When the agency's interpretation of law is at issue, we must determine whether the agency has been clearly vested by a provision of the law with the discretion to interpret the law. *Compare* Iowa Code § 17A.19(10)(c) (reviewing for correction of errors at law where agency is not vested with discretion to interpret the provision of law), *with* § 17A.19(10)(*l*) (reviewing to determine whether interpretation is "irrational, illogical, wholly unjustifiable" when the agency is vested with the discretion to interpret). *See also Renda v. Iowa Civil Rights Comm'n*, 784 N.W.2d 8, 10–15 (Iowa 2010) (analyzing the two standards of review when the agency's interpretation of law is at issue in

a judicial review action). In *Auen v. Alcoholic Beverages Division*, 679 N.W.2d 586, 590 (Iowa 2004), our supreme court concluded the ABD had been vested with the authority to interpret section 123.45. We therefore agree with both parties that our standard of review is to determine whether the agency's interpretation of section 123.45 is "irrational, illogical or wholly unjustifiable." *See* Iowa Code 17A.19(10)(*l*).

> A decision is "irrational" when it is "not governed by or according to reason." *Webster's Third New International Dictionary* 1195. A decision is "illogical" when it is "contrary to or devoid of logic." *Id.* at 1127. A decision is "unjustifiable" when it has no foundation in fact or reason. *See id.* at 2502 (defining "unjustifiable" as "lacking in . . . justice"); *id.* at 1228 (defining "justice" as "the quality or characteristic of being just, impartial or fair"); *id.* (defining "just" as "conforming to fact and reason").

*AFSCME Iowa Council 61 v. Iowa Pub. Emp't Relations Bd.*, 846 N.W.2d 873, 878 (Iowa 2014) (quoting *Sherwin-Williams Co. v. Iowa Dep't of Revenue*, 789 N.W.2d 417, 432 (Iowa 2010)).

However, our review is de novo for the constitutional claims Valero raises. *See LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 854 (Iowa 2015).

## III. Section 123.45.

The code provision at the heart of this controversy provides in part:

> A person engaged in the business of manufacturing, bottling, or wholesaling alcoholic beverages, wine, or beer, or any jobber, representative, broker, employee, or agent of such a person, shall not directly or indirectly supply, furnish, give, or pay for any furnishings, fixtures, or equipment used in the storage, handling, serving, or dispensing of alcoholic beverages, wine, beer, or food within the place of business of a licensee or permittee authorized under this chapter to sell at retail; nor shall the person directly or indirectly extend any credit for alcoholic beverages or beer or pay for any such license or permit, nor directly or indirectly be interested in the ownership, conduct, or operation of the business of another

> licensee or permittee authorized under this chapter to sell at retail, nor hold a retail liquor control license or retail wine or beer permit.

Iowa Code § 123.45. The ABD found, and the district court agreed, that this code provision restricts manufacturers of any type of alcoholic beverage from also having an ownership interest in a business that has a license or permit to sell any type of alcoholic beverage at retail. It is Valero's assertion on appeal this code section should be interpreted to restrict manufacturers of a particular type of alcoholic beverage from also having an ownership interest in a business that has a license or permit to sell that same type of alcoholic beverage at retail (i.e. restrict a wine manufacturer from holding a retail wine permit). In support of its position, it makes several claims, which we determine distill down to the following: (1) the 2016 judicial review decision incorrectly concluded the language of Iowa Code section 123.45 is unambiguous; (2) the ABD's interpretation of section 123.45 is irrational, illogical, and wholly unjustifiable; and (3) the ABD's denial of Valero's retail beer permit violates its equal protection and due process rights under both the Federal and Iowa Constitutions.

A. **Ambiguous or Unambiguous.** The 2015 judicial review decision declared section 123.45 ambiguous. It was the statute's ambiguity that caused the matter to be remanded to the ABD so the ABD could apply the rules of statutory construction to determine which interpretation the statute should receive. No party appealed that decision; instead, the parties permitted the matter to be remanded to the agency. Therefore, the 2015 declaration that section 123.45 was ambiguous with respect to the issues in this case was the final decision on the issue. The agency was not authorized to reconsider the issue of the whether the statute is

ambiguous upon remand, nor did it again consider the ambiguity issue in this case. *See City of Okoboji v. Iowa Dist. Ct.*, 744 N.W.2d 327, 331 (Iowa 2008) (noting when a case is remanded for a special purpose, the lower tribunal is authorized to do only the action directed, nothing else). Thus, we conclude the question of whether section 123.45 is ambiguous was not properly before the second district court judge in 2016 in the second judicial review decision.[4] We disavow the portion of the 2016 judicial review decision that declared section 123.45 unambiguous, and the 2015 judicial review decision remains controlling. However, this does not end our inquiry in this case. We must proceed to determine whether the agency's interpretation of section 123.45, after it applied the rules of statutory construction

---

[4] The 2015 judicial review decision was an appellate decision following an agency's contested case proceeding. *See Hedberg*, 873 N.W.2d at 279 (noting on judicial review the district court reviews the agency's actions in an appellate capacity). It considered the issue of whether section 123.45 was ambiguous with respect to the facts in this case, and it concluded the statute was ambiguous. That decision was not appealed and is therefore binding on both the agency and on any further appeals in the same case. *See State v. Grosvenor*, 402 N.W.2d 402, 405 (Iowa 1987).

> The law of the case doctrine "represents the practice of courts to refuse to reconsider what has once been decided." [*Id.*] It stems from "a public policy against reopening matters which have already been decided." *Bahl v. City of Asbury*, 725 N.W.2d 317, 321 (Iowa 2006). Under the law of the case doctrine, "the legal principles announced and the views expressed by a reviewing court in an opinion, right or wrong, are binding throughout further progress of the case upon the litigants, the trial court and this court in later appeals." *Grosvenor*, 402 N.W.2d at 405. Therefore, under the doctrine, "an appellate decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." *Bahl*, 725 N.W.2d at 321 (quoting *United Fire & Cas. Co. v. Iowa Dist. Ct.*, 612 N.W.2d 101, 103 (Iowa 2000)).

*State v. Ragland*, 812 N.W.2d 654, 658 (Iowa 2012). The law of the case doctrine is not without its exceptions, such as (1) "when the controlling authority has been clarified by subsequent judicial decisions," *see id.*, (2) when the facts before the court upon second trial are materially different from those in the first trial, *see Grosvenor*, 402 N.W.2d at 405, or (3) if an issue could have been raised but was not raised in the first appeal, *see id.* However, none of these exceptions apply in this current case. The ambiguity of section 123.45 was no longer an issue that could be reconsidered by a second judge in the second judicial review decision. *See Ragland*, 812 N.W.2d at 658.

on remand from the 2015 judicial review decision, is "illogical, irrational, or wholly unjustifiable." *See* Iowa Code § 17A.19(10)(*l*).

**B. ABD's Interpretation.** Upon the case's remand to the agency, the ABD correctly articulated the goal for interpreting a statute: to determine the legislative intent. *See IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001) ("When interpreting a statute, our ultimate goal is to ascertain and give effect to the intention of the legislature."). The ABD also properly articulated the means by which the legislative intent is ascertained: "[W]e consider the language used in the statute, the object sought to be accomplished, and the wrong to be remedied. We consider all parts of an enactment together and do not place undue importance on any single or isolated portion." *Swainston v. Am. Family Mut. Ins. Co.*, 774 N.W.2d 478, 482 (Iowa 2009) (citation omitted). The ABD acknowledged the legislature's public policy behind chapter 123 of the code:

> This chapter shall be cited as the "Iowa Alcoholic Beverage Control Act", and shall be deemed an exercise of the police power of the state, *for the protection of the welfare, health, peace, morals, and safety of the people of the state, and all its provisions shall be liberally construed for the accomplishment of that purpose.* It is declared to be public policy that the traffic in alcoholic liquors is so affected with a public interest that *it should be regulated to the extent of prohibiting all traffic in them, except as provided in this chapter*.

Iowa Code § 123.1 (emphasis added). In addition, section 123.2 makes it "unlawful to manufacture for sale, sell, offer or keep for sale, possess, or transport alcoholic liquor, wine, or beer except upon the terms, conditions, limitations, and restrictions enumerated in this chapter."

The ABD also noted the supreme court has held "the legislative intent for the enactment of section 123.45 was to maintain the independence of the various

levels of the liquor industry and to prevent tied-house arrangements." *Auen*, 679 N.W.2d at 591. "A 'tied-house' is a retail outlet that is owned or controlled by a manufacturer, wholesaler, or other entity in the chain of alcohol beverage distribution." *Id*. The purpose of prohibiting tied-house arrangements is "to prevent monopoly or control by manufacturers or distributors of the retail outlets for the sale of intoxicating liquors." *Winn Dixie Stores, Inc. v. Schenck Co.*, 662 So. 2d 1021, 1023 (Fla. Dist. Ct. App. 1995) (citation omitted).

Based on the legislative intent to liberally construe chapter 123 for the protection of the public, and with the knowledge that chapter 123 prohibits the manufacture or sale of intoxicating beverages except as specifically provided by the chapter, the ABD determined section 123.45 should be interpreted "to require strict separation between the manufacture, wholesale, and retail levels." The ABD found "allowing a person engaged in the business of manufacturing to simultaneously hold a retail permit of another alcoholic beverage creates the potential for influence or an arrangement of business interests, which is certainly what the legislature intended to prohibit." The ABD also noted that section 123.56(6)—permitting "a person employed by a manufacturer of native wine holding a class 'A' wine permit" to be simultaneously employed "by a brewery with a class 'A' beer permit" so long as that person "has no ownership interest in either licensed premises"—would be unnecessary if section 123.45 were interpreted to apply to only to the same type of alcoholic beverage as Valero asserted. *See In re Chapman*, 890 N.W.2d 853, 857 (Iowa 2017) ("[W]e apply the fundamental rule of statutory construction that we should not construe a statute to make any part of it superfluous. Accordingly, we 'presume the legislature included all parts of the

statute for a purpose, so we will avoid reading the statute in a way that would make any portion of it redundant or irrelevant.'" (citations omitted)). Therefore, the ABD concluded "a rational and logical interpretation of Iowa Code [section] 123.45 prohibits [Valero] from holding Iowa retail beer permits."

Valero asserts on appeal this interpretation is irrational, illogical, and wholly unjustifiable because Forsythe, as a part owner of a California winery, could not possibly exert improper undue influence or harm the Iowa consumer because Valero store 204 does not sell wine.[5] Because there is no possibility of a vertical integration from manufacturer to retailer in the facts of this case, Valero claims section 123.45 should not be interpreted to prohibit the joint ownership between Broken Earth Winery and Valero. In support of its interpretation of section 123.45, Valero cites the language used by the supreme court in *Auen*: "At the time the ban on tied-house arrangements was enacted, the legislature drew a bright-line rule defining the allowable relationship between a manufacturer, wholesaler or other entity in the *chain* of alcohol beverage distribution and the retailer of *these* beverages." 679 N.W.2d at 591 (emphasis added). Valero emphasizes the words "chain" and "these" in the quoted language above and asserts those words mean that joint ownership of manufacturing and retail is only prohibited if the alcoholic beverage type is the same, i.e. a vintner and wine retailer, or a brewer and a beer retailer. Valero also faults the agency for failing to interpret these words from the *Auen* opinion in its remand decision.

---

[5] We note the record reflects that store 204 did have a class "B" wine permit, but it surrendered that permit, and testimony at the agency hearing indicated the store had no future plans to sell wine in the store.

We first note that the agency was charged with interpreting section 123.45; it was not charged with interpreting the language used by the supreme court in *Auen*. Therefore, any failure of the agency to analyze this sentence from *Auen* does not amount to error. Secondly, we have reviewed this language from *Auen*, and we do not divine the interpretation Valero seeks to extract.

The issue addressed in *Auen* was whether the agency could relax the legislative language of section 123.45 through the adoption of agency rules that permitted remote or de minimus ownership interests among the three tiers of the tied-house arrangement—manufacture, wholesaler, retailer. *Id.* The supreme court determined this interpretation of the statute was illogical because the statute specifically prohibited "indirect" ownership interests. *Id.* Because of the use of the word "indirect" in the statute, the supreme court concluded the legislature meant to prohibit any ownership interest, no matter how remote or de minimus. *Id.* The supreme court concluded section 123.45 was a "bright-line rule" that prohibited any overlapping ownership interests. *Id.* The *Auen* court was not analyzing the statute's language with respect to different alcoholic beverage product lines, and thus, any attempt to construe the court's use of the words "chain" and "these" to mean only the same type of alcoholic beverage is improper.

Valero also faults the agency for not considering the economic impact the denial of the beer permit would have upon store 204 and upon the neighborhood where the store is located. It is Valero's assertion that such facts should be factored into the statutory interpretation analysis. We disagree. Whether Valero loses its capital investment in store 204 or whether the closing of this store has

economic effect on a specific neighborhood has no bearing on interpreting the language used by the legislature in drafting section 123.45.

In finding the statute in question was ambiguous, the 2015 judicial review decision noted that "a reasonable person could interpret the meaning of this statute to prohibit any alcoholic beverage manufacturer to hold any type of alcoholic beverage retail permit" or "a reasonable person could also interpret the statute to only prohibit the dual ownership among the same type of alcoholic beverages." In choosing between these two "reasonable" alternatives after applying the statutory construction rules, it can hardly be said the ABD acted irrationally, illogically, or wholly unjustifiably. *See* Iowa Code § 17A.19(10)(*l*). We therefore affirm the portion of the 2016 judicial review decision that affirmed the ABD's interpretation of section 123.45 as prohibiting a manufacturer of any alcoholic beverage from having an ownership interest in any business authorized to sell alcoholic beverages at retail.

**C. Constitutionality.** Finally, Valero asserts the agency's interpretation of section 123.45 to prohibit its retention of a retail beer permit violates its constitutional procedural due process and equal protection rights.

**1. Procedural Due Process.** With respect to its procedural due process claim, Valero asserts there was a lack of "fairness in the administrative proceeding" because it was deprived of its property interest in the beer permit." Valero notes the loss of the retail beer permit will cause the loss of its capital investment in the store—a loss of "some $500,000.00." Therefore, it claims to have been deprived of its "property rights [in the retail beer permit] without due process of law."

"The requirements of procedural due process are simple and well established: (1) notice; and (2) a meaningful opportunity to be heard." *Blumenthal Inv. Trusts v. City of W. Des Moines*, 636 N.W.2d 255, 264 (Iowa 2001). "A person is entitled to procedural due process when state action threatens to deprive the person of a protected liberty or property interest." *Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 690 (Iowa 2002). Assuming without deciding a retail beer permit amounts to a protected property interest, we conclude Valero was provided notice and a meaningful opportunity to be heard.

Valero was notified a year prior to the beer permit denial that Forsythe could not hold an ownership interest in both Broken Earth Winery and the Valero stores. The renewal application was denied in 2013 after it was determined Forsythe had not divested himself of his ownership interests in one of the companies. Valero appealed that denial and was provided a contested case proceeding before an ALJ. At the contested case proceeding, Valero was provided the opportunity to present evidence and make legal argument, which it did. Valero was then presented with appeal opportunities both at the agency level and through judicial review, of which it again took full advantage.

Valero does not proffer what additional processes it was entitled to receive and instead focuses its argument on the economic "unfairness" it perceives it will suffer as a result of the outcome of the procedures Valero was afforded—the denial of its retail beer permit. *See State v. Seering*, 701 N.W.2d 655, 666 (Iowa 2005) ("[N]o particular procedure violates [due process] merely because another method may seem fairer or wiser." (second alteration in original) (citation omitted)).

Because such arguments do not implicate procedural due process, we reject Valero's due process claim.

**2. Equal Protection.** With respect to the equal protection claim, Valero asserts it was singled out "for differential treatment compared to all other Iowa applicants for beer permits/renewals similarly situated." It claims there is no rational relationship to a legitimate government interest in the denial of its beer permit.

"The Equal Protection Clause requires that 'similarly-situated persons be treated alike.' 'If people are not similarly situated, their dissimilar treatment does not violate equal protection.'" *Blumenthal Inv. Trusts*, 636 N.W.2d at 268 (citation omitted). It appears Valero asserts it is treated differently "than any other Iowa beer permittee," but we conclude it is not similarly situated with other Iowa retail beer permittees. Unlike other retail beer permittees, Valero has common ownership with a manufacturer of an alcoholic beverage. Valero has not shown that other beer permittees, who have common ownership with a manufacturer of an alcoholic beverage, are treated differently than it has been treated. Because Valero has failed to demonstrate dissimilar treatment with those similarly situated, its equal protection claim fails.

**IV. Conclusion.**

We vacate that part of the district court's judicial review decision that held section 123.45 was unambiguous because that issue had already been resolved in an earlier judicial review decision. However, we affirm the ABD's remand decision in this case in its entirety. Its interpretation of section 123.45, so as to prohibit a manufacturer of any type of alcoholic beverage from holding an

ownership interest in a business that holds any type of alcoholic beverage retail license or permit, is not irrational, illogical, or wholly unjustifiable. We likewise find no constitutional violation in the ABD's denial of Valero's retail beer permit.

**DISTRICT COURT DECISION VACATED IN PART; AGENCY DECISION AFFIRMED.**