# IN THE COURT OF APPEALS OF IOWA

No. 17-1276
Filed March 6, 2019

**CURT ANDERSON and CAROL ANDERSON,**
        Petitioners/Cross-Appellants,

**JEFFREY ENGLAND, LARRY ENGLAND, and CHARLOTTE ENGLAND,**
        Petitioners-Appellants,
**vs.**

**STATE OF IOWA, ex rel. IOWA DEPARTMENT OF TRANSPORTATION,**
        Respondent-Appellee.
_____

        Appeal from the Iowa District Court for Wapello County, Joel D. Yates,

Judge.

        Appellants and cross-appellants challenge the department of

transportation's cancellation of an auction for the sale of a parcel of land.

**AFFIRMED.**


        Nathan A. Olson and Christine E. Branstad of Branstad Law, PLLC, Des

Moines, and Steven P. Wandro of Wandro & Associates, P.C., for appellants.

        Thomas J. Miller, Attorney General, and David S. Gorham, Noel C. Hindt

(until withdrawal), and Richard E. Mull (until withdrawal), Assistant Attorneys

General, for appellee.

        Paul Zingg of Denefe, Gardner & Zingg, P.C., Ottumwa, for cross-

appellants.


        Heard by Vogel, C.J., and Vaitheswaran and McDonald, JJ.

**McDONALD, Judge.**

In this administrative appeal, appellants Kurt and Carol Anderson and cross-appellants Jeffrey, Larry, and Charlotte England (collectively "the Englands") challenge the Iowa Department of Transportation's (DOT's) cancellation of an auction for a parcel of land. The DOT affirmed the cancellation in a declaratory order. The district court affirmed the declaratory order. We also affirm.

The DOT owns the parcel of land at issue in this appeal. In 2016, the DOT decided to dispose of the parcel by auction. The DOT opened the auction to the owners of the three abutting pieces of property: Jon and Cheryl Simparcel, Kurt and Carol Anderson, and Jeffrey England. The DOT sent the owners of each abutting parcel a letter and a bidding form. The letter stated that "Iowa DOT policy allows a purchase preference for all abutting owner(s) of land to be sold." The letter stated it would give preference to bids that equaled or exceeded the fair market value of the parcel, which the DOT determined was $45,000. The bid form stated that to submit a valid bid the bidder must include a check with the returned form. The form also pre-printed $45,000 as the default bid amount: "I herewith submit an unconditional offer of $45,000 to the [DOT] for the purchase of the following land[.]" Finally, the form stated "The [DOT] reserves the right to waive any technicalities and to reject any or all bids or offers."

The Andersons returned a completed form. The bid form offered $45,000 and was accompanied by a check for the same amount. Jeffrey England also submitted a form. Jeffrey's bid form left the pre-printed bid amount of $45,000. However, Jeffrey's bid was accompanied by a check signed by his parents, Larry and Charlotte, in the amount of $51,016. After the Andersons learned another

party was interested in the property, they increased their bid to $50,000. The bidding period then closed.

Subsequently, the DOT called Jeffrey. The exact substance of that phone call is not in the record. Jeffrey contends he was "informed he was the high bidder for the parcel." According to the agency, Jeffrey "was informed that the check from Larry and Charlotte England for $51,016 was the highest offer, and that there were discrepancies between the Offer to Buy Jeffrey England signed and the check received from Larry and Charlotte England." Jeffrey was also allegedly informed "the DOT would need to send a new Offer to Buy form to Larry and Charlotte England, to be signed so that the offer would match the check."

On the same day, the DOT also called Charlotte. It is unclear exactly what transpired during this phone call. According to the DOT, Charlotte was "informed of the discrepancies between the Offer to Buy that Jeffrey England signed and the check received from Larry and Charlotte England." She was also told "that [the DOT] would be mailing her paperwork, including a new Offer to Buy, to be signed by Larry and Charlotte England, so that the offer would match the check."

Finally, the DOT sent the Andersons a letter that explained that their bid was unsuccessful. The DOT also returned the Andersons' uncashed check.

Shortly after, the DOT attempted to mail Charlotte and Larry the original, voided bid form that Jeffrey had submitted. The DOT also sent a blank bid form and a note that said, "Cross off the amount of $45,000.00 and write in $51,016.00 above it and initial. Fill in name as Larry England and Charlotte England. Please sign and date as 3-18-16." However, because of a clerical error, the DOT inadvertently sent the forms to the Andersons instead of Charlotte and Larry.

After the Andersons were inadvertently mailed the letter intended for Larry and Charlotte, the Anderson's attorney contacted the DOT regarding the potential sale of the property. The Andersons raised concerns that the land was being sold to parties who were not abutting landowners. They requested "an opportunity for an open auction of the property with the abutting land owners identified in your disposal notice." In response to the Anderson's concerns, the DOT reviewed the matter and concluded that the sale of the land should not go forward. The DOT issued Charlotte and Larry a check refunding their payment. The DOT also sent letters to all abutting landowners, informing them that the sale would be cancelled and the DOT would reinitiate the bidding process at a later time.

In response, the Andersons and the Englands petitioned for a declaratory order. The Englands claimed the DOT was contractually bound to sell the land to Jeffrey or, in the alternative, the DOT was contractually bound to sell the land to Larry and Charlotte. The Andersons claimed they were the sole abutting landowners to place a valid bid and they were therefore entitled to the property.

In response, the DOT issued a declaratory order, determining that it had not erred in cancelling the auction and that it had not entered into an enforceable contract with Jeffery or Charlotte and Larry England. Both the Andersons and the Englands appealed to the district court. The district court affirmed. The Englands now appeal that decision, and the Andersons cross-appeal.

The parties present a number of arguments regarding whether there was an enforceable contract between the DOT and the Andersons or the Englands. We think these arguments miss a more fundamental question: Does the DOT even have the authority to determine the existence of a contract. We think not.

"Administrative agencies are tribunals of limited jurisdiction." *Bair v. Blue Ribbon, Inc.*, 129 N.W.2d 85, 86 (Iowa 1964) (quoting 2 Am. Jur. 2d *Administrative Law* § 328). An agency "has no inherent power and has only such authority as is conferred by statute or is necessarily inferred from the power expressly granted." *Zomer v. W. River Farms, Inc.*, 666 N.W.2d 130, 132 (Iowa 2003) (quoting *Schmidt v. Iowa State Bd. of Dental Exam'rs*, 423 N.W.2d 19, 21 (Iowa 1988)); *see Bair*, 129 N.W.2d at 86 ("[An agency's] jurisdiction is dependent entirely upon the validity and the terms of the statutes reposing power [to it] . . . ." (citation omitted)). "Whether a particular administrative agency has primary jurisdiction . . . depends on the statutory scheme." *Charles Gabus Ford, Inc. v. Iowa State Highway Comm'n*, 224 N.W.2d 639, 647 (Iowa 1974); *accord Dehning v. Eads*, 201 N.W.2d 454, 456 (Iowa 1972). The DOT only has authority to issue a declaratory order when "[t]he subject matter of the petition [is] within the primary jurisdiction of the department." Iowa Amin. Code r. 761-12.2(1). No statute or regulation provides the DOT with authority to adjudicate the existence of a contract. While the DOT, as a legal entity, has the authority to enter into contractual relations, it does not have the authority to adjudicate the issue of whether a contract was formed. The authority to declare the existence of a contract and the rights and the duties of the parties to any such contract is inherent in and exclusive to the judicial branch. *See Peterson v. Domestic Util. Servs. Co.*, 179 N.E.2d 444, 449 (Ill. Ct. App. 1962) ("An administrative agency, such as the Commerce Commission, is not a judicial body and it has no jurisdiction to adjudicate controverted individual property or contract rights." (citation omitted)); *R.R. Comm'n of Tex. v. Rau*, 45 S.W.2d 413, 416 (Tex. Civ. App. 1931) (concluding an administrative agency has no authority to

determine contract rights). To the extent the parties seek a declaration of contract rights, their respective remedies lie in the district court and not within the very agency allegedly a party to a contract.

With that understanding, the only question presented on appeal is whether the DOT's decision to cancel the land auction violated the Iowa Administrative Procedure Act, Iowa Code chapter 17A (2016). Our "review of the DOT's decision is governed by Iowa Code chapter 17A." *Hager v. Iowa Dep't of Transp.*, 687 N.W.2d 106, 108 (Iowa Ct. App. 2004); *accord Pointer v. Iowa Dep't of Transp.*, 546 N.W.2d 623, 625 (Iowa 1996). "The district court acts in an appellate capacity" when reviewing agency decisions. *Ludtke v. Iowa Dep't of Transp.*, 646 N.W.2d 62, 64 (Iowa 2002); *accord New Midwest Rentals, LLC v. Iowa Dept. of Commerce*, 910 N.W.2d 643, 648 (Iowa Ct. App. 2018). We apply the same standards "to determine whether we reach the same result as the district court." *New Midwest Rentals, LLC*, 910 N.W.2d at 648. We affirm if we come to the same conclusion as the district court, but we reverse if we come to a different conclusion. *Westling v. Hormel Foods, Corp.*, 810 N.W.2d 247, 251 (Iowa 2012); *New Midwest Rentals, LLC*, 910 N.W.2d at 648.

On the relevant question of whether the parties have demonstrated the DOT acted arbitrarily, capriciously, or otherwise committed error in cancelling the auction, we agree with the district court that it did not do so. In the letter sent to the potential bidders, the DOT stated it was soliciting offers from abutting owners for the purchase of the land. The letter made clear that any offers were for "consideration" by the DOT "prior to offering the property for public sale." In the preprinted forms mailed to the potential bidders, the DOT made explicitly clear that

it reserved the right "to reject any or all bids or offers." This reservation of rights was not qualified or limited in any respect. There was thus nothing in the solicitation that prevented the DOT from canceling the auction. Here, the DOT determined there was too much confusion to move forward with this particular auction and decided to start over. That wholly discretionary decision was certainly within its purview. *See, e.g., Dickinson Co., Inc. v. City of Des Moines*, 347 N.W.2d 436, 440 (Iowa Ct. App. 1984) (noting governmental entity had discretion to reject all bids and solicit new bids on a contract); *J.L. Manta, Inc. v. Braun*, 393 N.W.2d 490, 493 (Minn. 1986) ("Nevertheless, although the DOT has the option of accepting the Rainbow bid as the lowest remaining responsible bid, it is not precluded from rejecting all bids and readvertising the contract in the event it should elect to do so.").

We have considered each of the parties' arguments, whether or not set forth in full herein, and we conclude the parties' have not established an entitlement to relief pursuant to the Iowa Administrative Procedure Act.

**AFFIRMED.**

Vogel, C.J., concurs; Vaitheswaran, J., concurs specially.

**VAITHESWARAN, Judge.**  (concurring specially)

I specially concur.  I disagree with the majority's statement that the DOT lacks authority to adjudicate the existence of a contract.  I believe Iowa Code section 306.23 (2016), governing the sale of tracts adjacent to property condemned for highway purposes, confers the necessary authority.  And, as the Iowa Supreme Court stated in *Zomer v. West River Farms, Inc.,* 666 N.W.2d 130, 133 (Iowa 2003), the agency has the power to decide any issue necessary to a determination within its purview.

That said, I would conclude the agency did not err in interpreting and analyzing section 306.23.  Accordingly, I concur in the result.