# IN THE COURT OF APPEALS OF IOWA

No. 22-0242
Filed May 10, 2023

JAMES W. PALENSKY and TERESA A. SCHEIB-PALENSKY, Individually and as Trustees of THE PALENSKY 1998 TRUST DATED FEBRUARY 25, 1998,
    Petitioners-Appellants,

vs.

STORY COUNTY BOARD OF ADJUSTMENT,
    Respondent-Appellee,

and

BRADLEY PERKINS,
    Indispensable Party.
_____

    Appeal from the Iowa District Court for Story County, James C. Ellefson, Judge.

    Petitioners appeal the district court's grant of summary judgment to respondent on a petition for declaratory judgment and the annulment of a writ of certiorari. **AFFIRMED.**

    Gregory G.T. Ervanian and Joseph A. Cacciatore of Ervanian & Cacciatore, L.L.P., Des Moines, for appellants.

    Hugh J. Cain (until withdrawal), Brent L. Hinders, and Eric M. Updegraff of Hopkins & Huebner, P.C., Des Moines, for appellee.

    Heard by Tabor, P.J., and Schumacher and Buller, JJ.

**SCHUMACHER, Judge.**

James Palensky and Teresa Scheib-Palensky (Palenskys) appeal the district court's grant of summary judgment on a petition for declaratory judgment to the Story County Board of Adjustment (Board) and the annulment of a writ of certiorari. We find (1) the district court properly denied the Palenskys' request for declaratory relief; (2) the previous proceedings before the Board were not a nullity; (3) the Board made adequate factual findings; (4) the Palenskys' claims concerning the modification of a conditional use permit (CUP) were untimely; (5) the Board's findings were supported by substantial evidence; (6) the Palenskys were not denied due process; and (7) the Palenskys were not denied their right to petition the Board for redress of their grievances. We affirm the decisions of the district court and the Board.

## I. Background Facts & Proceedings

The background facts in this case are set out in *Palensky v. Story County Board of Adjustment*, No. 19-0349, 2020 WL 1879711, at *1 (Iowa Ct. App. Apr. 15, 2020). Bradley Perkins requested a CUP for an area in rural Story County where he intended to build a bed and breakfast inn and event venue.[1] *Palensky*, 2020 WL 1879711, at *1. The Board approved CUP09-17 and the Palenskys filed a petition for writ of certiorari, which was sustained by the district court. *Id.* On appeal, we affirmed the district court, finding the Board did not substantially comply

---

[1] This appeal involves only the bed and breakfast and event venue. There is a separate appeal that involves Perkins's plans to develop a commercial campground, CUP08-17, and that case has a slightly different procedural history. *See Palensky v. Story Cnty. Bd. of Adjustment*, No. 22-0249, 2023 WL _____ (Iowa Ct. App. ___ __, 2023).

with a requirement to make written findings of fact. *Id.* at *7. The matter was remanded to the Board. *Id.*

Following remand, the Board reconsidered CUP09-17. The Board did not hold a new public hearing but made written findings based on the previous hearing. The Board approved CUP09-17, which had some modifications due to CUP03-19.1.[2]

The Palenskys filed a petition for declaratory judgment and a petition for writ of certiorari. They claimed the Board's proceeding on remand was a nullity, illegal, or in excess of its jurisdiction because the court of appeals decision annulled the earlier proceedings. They asserted that Perkins should be required to file a new application and the Board should conduct a new public hearing. In the alternative, they claimed the issuance of the CUP was arbitrary, capricious, unreasonable, and not supported by substantial evidence.

The Board and the Palenskys each filed motions for summary judgment on the issue of whether the Palenskys could seek declaratory relief. Each party resisted the other party's motion. The district court granted the Board's motion for summary judgment, finding "declaratory judgment may not be utilized for the purpose of retrying matters previously adjudicated or as a substitute for an appeal." The court found all of the issues raised by the Palenskys could be decided in the certiorari action and the petition for declaratory judgment should be dismissed. On the Palenskys' motion, the court determined the case was "remanded for findings

---

[2] CUP09-17 was originally for an eight-bedroom bed and breakfast inn. The approval of CUP03-19.1 in October 2019 modified the plans to a four-bedroom bed and breakfast inn with an addition for indoor events.

of fact, which is entirely inconsistent with any need to start over." The court denied the Palenskys' motion for summary judgment. The court noted the case would proceed on the Palenskys' petition for writ of certiorari. The Palenskys filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), which was denied by the court.

The case proceeded to a trial to the court on August 24, 2021. The court reiterated its previous ruling that our decision did not nullify all of the proceedings of the Board but required the Board to make written factual findings to support the CUP. The court ruled (1) the Board made adequate findings of fact; (2) the current Board had authority to make factual findings; (3) the Board properly considered the previous proceedings; (4) the Board properly considered whether to approve the CUP; (5) the Board's actions were not arbitrary, capricious, or unreasonable; (6) the Board could modify the provisions of CUP09-17, based on CUP03-19.1; (7) the Board complied with its rules for granting CUPs; (8) the Board's proceeding did not violate due process; (9) the Board did not violate the Palenskys' right to petition the government for redress of grievances; (10) the Board's decision was supported by substantial evidence; and (11) the CUP did not violate ordinances or the Ames Urban Fringe Plan. The court concluded the writ should be annulled and the actions of the Board affirmed.

The Palenskys filed a motion pursuant to rule 1.904(2). The court denied the motion for reconsideration. The Palenskys now appeal.

## II.     Declaratory Judgment

The Palenskys' petition for declaratory judgment sought a determination of the parties' rights and obligations under a previous decision of this court. They

claim the district court erred by granting the Board's motion for summary judgment and denying their motion on the grounds that a declaratory judgment was not available to them. A declaratory judgment ruling entered on summary judgment is reviewed for the correction of errors at law. *Walton v. Gaffey*, 895 N.W.2d 422, 426 (Iowa 2017).

In general, "a person claiming a decision by the board of adjustment is illegal may seek relief from that decision by filing a writ of certiorari." *City of Johnston v. Christenson*, 718 N.W.2d 290, 296 (Iowa 2006). An action for a declaratory judgment is not available as a substitute for an appeal. *Id.* There is, however, an exception to the general rule:

> We will permit a declaratory judgment as a claim for relief from an action of an administrative board as a companion or alternative claim to a statutory certiorari action if: (1) the statutory remedy of certiorari will not afford complete relief, and (2) the legislature did not intend certiorari to be the exclusive remedy. Thus, if the declaratory-judgment action tests the constitutionality of a zoning ordinance, or some other issue outside the action of a board of adjustment, both the petition for writ of certiorari and declaratory judgment petition may be pursued as remedies from a decision of the board of adjustment. Otherwise, a declaratory judgment may not be used as a remedy from a decision by the board of adjustment.

*Id.* (citations and footnote omitted).

The Palenskys assert that they come within this exception, citing *C. Line, Inc. v. Malin*, where we found a declaratory judgment petition was not barred because "the certiorari claim sought to remedy an alleged wrong, while the declaratory judgment claim sought interpretation of the parties' rights and obligations under a [separate federal] court decree." No. 10-1600, 2011 WL 6058580, at *5 (Iowa Ct. App. Dec. 7, 2011).

We determine the exception is not applicable in this case. "Where the validity of the ordinances is at issue, declaratory relief is allowed; where only the grant or denial of a particular application is at issue, declaratory relief is disallowed." *Oehl v. Amana Colonies Land Use Dist. Bd. of Trs.*, No. 13-0328, 2014 WL 1234216, at *4 (Iowa Ct. App. Mar. 26, 2014). The Palenskys are not challenging the validity or constitutionality of ordinances, or requesting an interpretation of a ruling in separate court proceedings. We conclude the district court did not err by finding declaratory judgment was not an available form of relief.

### III.    Annulment

In the petition for writ of certiorari, the Palenskys claimed the Board's proceeding on remand was a nullity based on language in our earlier appellate decision. The Palenskys contend that all of the proceedings leading to CUP09-17 were annulled, thereby requiring the Board to engage in new proceedings. Our review of a district court ruling on a writ of certiorari is for the correction of legal error. *Earley v. Bd. of Adjustment*, 955 N.W.2d 812, 816 (Iowa 2021).

In the previous appellate proceedings, Perkins filed a motion to dismiss, claiming "the district court's order annulling the board's proceedings and remanding for findings of fact required the Palenskys to file for interlocutory relief." *Palensky*, 2020 WL 1879711, at *2. We rejected this argument, stating, "Since the court annulled the Board's decision and relinquished jurisdiction over the case, its ruling was a final judgment." *Id.* In the reasoning leading to this conclusion, we stated, "While the district court did remand for 'creation of written findings of fact regarding its decision to approve Perkins's CUP application,' this instruction on how to proceed does not overcome the annulment of prior proceedings." *Id.* Our

discussion in this portion of the decision addressed only the question of whether the district court's ruling was a final judgment. *See id.*

Outside of this discussion of whether the Palenskys were seeking interlocutory relief, there was no discussion of whether the Board's proceedings were a nullity. In the conclusion of the case we found the Board did not substantially comply with a requirement for written findings. *Id.* at *7. We reversed and remanded for findings of fact. *Id.* There was no ruling that the CUP proceedings needed to be reinitiated. *See id.* In our discussion of Perkins's motion to dismiss we were not making a larger statement concerning the nullity of the Board's proceedings that would be in contrast to our other statements in the same decision that the case was remanded to the Board for written findings of fact. *See id.*

On remand, the district court stated,

None of those [prior] decisions require anything from the Board beyond findings of fact. This court understands that the CUPs were annulled or vacated, but concludes that there was no intention by any previous court to hold that the work done by the Board and the staff and the statements of persons who appeared before the Board somehow disappeared.

We conclude the district court did not err by finding that while CUP09-17 was annulled, the Board's previous proceedings were not annulled.

**IV.    Analysis of the CUP**

**A.**    The Palenskys assert the Board failed to make adequate factual findings to support the CUP following remand. We previously stated:

In 1979, the Iowa Supreme Court promulgated the requirement that "boards of adjustment shall make written findings of fact on all issues presented in any adjudicatory proceeding." The court later clarified that substantial compliance with the written-findings requirement will

> suffice and strict compliance is not required. "[S]ubstantial compliance means the statute or rule has been followed sufficiently so as to carry out the intent for which it was adopted." The intent of the written-findings requirement is "to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted." However, "proceedings before a board of supervisors and like tribunals are necessarily informal and courts are not disposed to review them with technical strictness."

*Palensky*, 2020 WL 1879711, at *3 (citations omitted). In addition, Story County Ordinance section 90.03(3)(G)(1)(a) "provides that the Board 'shall establish a finding of facts based upon information contained in the application, the staff report, and the Commission recommendation and presented at the Commission or Board of Adjustment hearings.'" *Id.*

The Palenskys point out that in our analysis of CUP09-17, we noted that a "staff analysis of the review standards . . . could not serve as a substitute for the Board's findings."[3] *Id.* at *7. The Palenskys assert the Board did no more following remand than it did previously, other than adopting a staff report, and they claim this was not sufficient.

The district court found:

> The Palenskys contend that previous courts determined the staff report was not adequate as findings of fact. That is not accurate. In fact, the inadequacy the previous courts found was that the Board did not adopt the staff report, or anything else, as its findings in its 2018 decision. The Court of Appeals was clear in distinguishing between the presentation of information to the Board and adoption of that information as findings. . . . The courts, both

---

[3] This action is a continuation of the proceedings in *Palensky*, 2020 WL 1879711, and we are bound by our rulings in that case under the law of the case doctrine. *See New Midwest Rentals, LLC v. Iowa Dep't of Commerce*, 910 N.W.2d 643, 649 n.4 (Iowa Ct. App. 2018) ("The law of the case doctrine 'represents the practice of courts to refuse to reconsider what has once been decided.'" (citation omitted)). An appellate decision is controlling in later appeals in the same case. *Id.*

district and appellate, did not say that the staff report would have been inadequate if it had been adopted by the Board.

The staff report, which was adopted by the Board after the case was remanded, substantially complies with "the written-findings requirement . . . 'to enable a reviewing court to determine with reasonable certainty the factual basis and legal principles upon which the board acted.'" *See id.* at *3 (citation omitted). We also determine the Board's factual findings meet the requirements of Story County Ordinance section 90.03(3)(G)(1)(a). The Board did not fail to comply with its own rules or the law relating to findings of fact.[4] We note, and counsel for the board agreed, that the approach taken by the board following remand from this court was somewhat of a minimalistic approach. But as highlighted previously, our supreme court has indicated we are not to review these proceedings with technical strictness. We conclude the CUP is not invalid due to inadequate written factual findings.

**B.** The Palenskys contend the Board acted illegally by modifying CUP09-17, based on its approval of CUP03-19.1. The Palenskys' appellate brief states, however, "The Palenskys have no objection to the bed and breakfast with 1,200 square feet of attached event space." Hence, they challenge the process that led to the approval of CUP03-19.1, not the actual modifications to CUP09-17.

The Board's written findings of fact dated August 19, 2020, included a special note:

---

[4] The Palenskys claim the Board failed to consider new facts. In a supplement to the trial briefs, the Palenskys sought to introduce evidence that Perkins was operating a "care farm" for animals on his property. The district court found the evidence "had no relevance to the issues properly before the court in these cases." We agree that the evidence is not relevant to the issues raised in this appeal.

CUP09-17 included a request for bed and breakfast for eight bedrooms that included a proposed addition to the dwelling to add four bedrooms and the separate event venue building. CUP03-19.1 approved with conditions by the Board of Adjustment on October 16, 2019, changed CUP09-17. CUP03-19.1 was submitted by Bradley Perkins for a Bed and Breakfast Inn, with scheduled events (receptions, private parties & meetings) by appointments that involves construction of an addition on the south side of the dwelling to enclose an existing outdoor patio area primarily to create space throughout the year for bed and breakfast scheduled events guests, add dining room space, and make the entry accessible to access the existing master bedroom.

The Board of Adjustment's action of the Written Findings of Fact for CUP09-17 acknowledges the above identified changes due to the Board of Adjustment's approval of CUP03-19.1.

The district court did not address the merits of the Palenskys' claims regarding the modification of CUP09-17 by CUP03-19.1, finding, "The approval of CUP03-19.1 was an accomplished fact by the time of the September 16, 2020 meeting. This is an untimely attack on CUP03-19.1." CUP03-19.1 was approved by the Board on October 16, 2019. We find no error in the court's conclusion that the Palenskys' attacks on CUP03-19.1 were untimely. *See Arkae Dev., Inc. v. Zoning Bd. of Adjustment*, 312 N.W.2d 574, 577 (Iowa 1981).

**C.** The Palenskys also claim the Board did not consider the combined effects of CUP09-17 as modified and another CUP obtained by Perkins, CUP08-17, for a commercial campground. They assert this failure violated Story County Ordinances chapter 90 but do not clarify which provisions of the ordinances they claim were violated.

Both CUP09-17 and CUP08-17 were considered by the Board on September 16, 2020. In the factual findings for CUP09-17, the Board addressed the modifications occasioned by approval of CUP03-19.1. The Board was not required to hold a new hearing to consider the combined effects of the CUPs. The

Board followed our remand instructions in *Palensky*, 2020 WL 1879711, at *7, and made written factual findings to support CUP09-17.

**D.** The Palenskys claim CUP09-17 is not supported by substantial evidence. They state there were no factual findings that the CUP (1) was in accord with the Ames Urban Fringe Plan; (2) was compatible with the character of the immediate vicinity; (3) would adequately safeguard the health, safety, and general welfare of persons residing in surrounding property; and (4) would not unduly increase congestion in the roads. *See* Story County, Iowa, Code of Ordinances § 90.04(1), (2).

We consider whether the Board's decision was supported by substantial evidence. *See Bontrager Auto Serv., Inc. v. Iowa City Bd. of Adjustment*, 748 N.W.2d 483, 495 (Iowa 2008); *TSB Holdings, L.L.C. v. Bd. of Adjustment*, 913 N.W.2d 1, 10 (Iowa 2018) ("Fact-findings or issues that were before the board for decision are 'reviewed under the substantial evidence standard.'" (citation omitted)). The court does not substitute its judgment for that of the Board. *See Bontrager*, 748 N.W.2d at 495. "Evidence is substantial 'when a reasonable mind could accept it as adequate to reach the same findings.'" *Id.* (citation omitted). "The possibility that two persons might reach differing conclusions upon review of the evidence does not prevent a finding from being supported by substantial evidence." *Galinsky Fam. Real Est., LLC v. City of Des Moines Zoning Bd. of Adjustment*, No. 10-0356, 2011 WL 227589, at *3 (Iowa Ct. App. Jan. 20, 2011).

**1.** The district court found the Board was not required to follow the Ames Urban Fringe Plan, noting the implementing agreement of the Plan "does not create any explicit limitations on [CUP] applications." Story County Ordinance

section 90.01 provides, "The objective of the [CUP] process is to *encourage compatibility* with the proposed development with the environment, and with existing and future land uses in the area." (Emphasis added). As the district court noted, this statement is aspirational and does not limit the Board's discretion in granting CUPs. We find no error in the district court's conclusion that because the Ames Urban Fringe Plan was not binding on the Board, there is no requirement that there be substantial evidence to show the CUP was compatible with the Ames Urban Fringe Plan.

**2.** One of the factors the Board should consider when reviewing a proposed CUP is compatibility. *Palensky*, 2020 WL 1879711, at *3. The ordinance requires "[t]he proposed buildings or use shall be constructed, arranged and operated so as to be compatible with the character of the zoning district and immediate vicinity, and not to interfere with the development and use of adjacent property in accordance with the applicable district regulations." Story County Ordinance § 90.04(1)(A).

Perkins's property is in an A-1 agricultural zoning district. Perkins stated he intended to use the property subject to CUP09-17 for events, such as weddings. The district court found, "The evidence demonstrates that the event venue would be between 1000 and 1500 feet from any residence and the topography would shield those residences from noise and light." The court concluded, "A reasonable person, and thus the Board, could conclude that placing a bed and breakfast and event center on a 70-plus acre parcel in an A-1 Agricultural zone was consistent with 'the character of the zoning district and immediate vicinity.'" We determine there is substantial evidence in the record to support a finding that CUP09-17 is

"compatible with the character of the zoning district and immediate vicinity." *See id.*

**3.** In reviewing a proposed CUP, the Board should not approve the CUP if there is a "strong probability" it will "[n]ot adequately safeguard the health, safety and general welfare of persons residing or working in adjoining or surrounding property." Story County Ordinance § 90.04(2)(A). The district court noted the Palenskys focused on fire safety issues, which are actually governed by section 90.04(2)(C), providing a CUP should not be approved if there was a "strong probability" it would "[u]nduly increase . . . the hazard from fire, flood or similar dangers."

The district court found:

> The Board of Adjustment received testimony from Bradley Perkins, the applicant and a mechanical engineer that the building would comply with International Building Codes concerning ingress and egress standards for fire protection. Perkins also testified that he could design the building with materials that were designed to prevent the spread of fire. He explained that he would design the building with these materials specifically to address the lack of a fire sprinkler system. Additionally, Perkins explained that he would require events at the event venue to be catered in as opposed to cooked on-site. The event venue would have no on-site kitchen and no on-site grease traps or other hazards associated with cooking. All of this was included in the findings of fact. The Board of Adjustment considered that any fire that one district could not handle would result in cooperation from other districts. The record contains sufficient evidence for a reasonable person to conclude there is not a "strong probability" that the CUP would "[u]nduly increase . . . [the] hazard from fire."

We find no error in the district court's conclusion that there was substantial evidence supporting a finding there was not "a strong probability" that CUP09-17 would "unduly increase . . . the hazard from fire."

**4.** The Palenskys claim there is not substantial evidence in the record to show CUP09-17 would not unduly increase traffic congestion. Section 90.04(1)(C) provides "[t]he development shall provide for adequate ingress and egress, with particular attention to vehicular and pedestrian safety and convenience, traffic flow and control, and emergency access." Additionally, a proposed CUP should be denied if there is a "strong probability" it would "[u]nduly increase congestion in the roads." Story County Ordinance § 90.04(2)(C).

Perkins proposed to provide fifty-eight parking places for the event venue. He anticipated having one large event per week, with as many as fifty-eight cars traveling to and then from the venue. In addition, he planned to have one smaller event per week, with less than fifty people traveling to and from the event venue. The district court noted, "the fact that a project increases traffic does not mean that there is a failure to provide adequate ingress or egress." While approval of CUP09-17 means there likely will be more traffic in the area, the evidence does not show a "strong probability" it would "[u]nduly increase congestion in the roads." *See id.* We conclude there is sufficient evidence in the record to show the CUP would not unduly increase traffic congestion.

## V. Due Process

The Palenskys claim the Board's proceedings following remand violated due process. They note the members of the Board changed from when a hearing was held on the CUP on February 21, 2018, to when the Board approved the CUP following remand on September 16, 2020. The Palenskys assert that they were denied due process because a decision was not made by the entity that heard the evidence. We review constitutional issues, such as due process claims, de novo.

*PSFS 3 Corp. v. Michael P. Seidman, D.D.S., P.C.*, 962 N.W.2d 810, 832 (Iowa 2021).

The Palenskys cite to *In re Marriage of Seyler*, which stated, "Generally in cases tried to the court, due process entitles a litigant to a decision on the facts by a judge who has heard the evidence." 559 N.W.2d 7, 9 (Iowa 1997). "[A] successor judge may render a judgment consistent with due process so long as he or she orders a full or partial retrial, or in appropriate cases, becomes familiar with the entire existing record." *Id.*

The Board "is a continuous body, and its power is a continuing power." *See Schumacher v. City of Clear Lake*, 239 N.W. 71, 73 (Iowa 1931). Similarly,

> There can be no serious contention that every time there is an annual charter election in the city of Bayonne, wherein one–half of the council go out of office and their successors are elected, that all prior proceedings end, and must be again commenced. The city council is a continuous body, and, as to street improvements, the new city council can take up the proceedings where they were left by the old council, and proceed to carry out the provisions of the charter in reference thereto.

*State v. Mayor of City of Bayonne*, 28 A. 381, 382 (N.J. 1893).

We find the change in membership of the Board does not create a due process violation. Furthermore, the record shows that following remand, the Board was familiar with the matters presented at the February 18, 2018 hearing. *See Seyler*, 559 N.W.2d at 9 (finding a matter might be decided by a successor judge who has become familiar with the record). The findings of fact referred to evidence presented at the hearing. We conclude the Palenskys have not shown they were denied due process.

**VI.     Petition for Redress of Grievances**

Finally, the Palenskys assert their constitutional right to petition for the redress of grievances was violated.  *See* U.S. Const. amend. I (providing a right "to petition the Government for a redress of grievances"); Iowa Const. art. I, § 20 ("The people have the right freely to assemble together to counsel for the common good; to make known their opinions to their representatives and to petition for a redress of grievances.").  The Palenskys claim that following the remand, the Board would not permit them to make written submissions or provide a public hearing prior to voting to approve CUP09-17.  Our review of constitutional claims is de novo.  *Mitchell Cnty. v. Zimmerman*, 810 N.W.2d 1, 6 (Iowa 2012).

The district court denied the Palenskys' claims, finding:

> The Board did not deny the Palenskys their right to petition for redress of grievances when it created written findings of fact as directed by the district court.  They had already been heard by the Board on February 21, 2018.  On remand, the Board was simply following the instructions of the district court issued in compliance with [Iowa Rule of Civil Procedure] 1.1411, as affirmed by the Court of Appeals, to create written findings of fact.  This certiorari case and this decision are further demonstration that the Palenskys have been afforded the right to petition for redress.

On our de novo review, we agree with the district court's conclusions.  The Palenskys presented their arguments at the Board's hearing in February 2018.  They have not been denied their right to petition the Board for redress of their grievances.

We affirm the decisions of the district court and the Board.

**AFFIRMED.**