Dave AUEN and Ike Auen Distributing Company, Inc., Duncan Cameron and Bill Wallace and Vanguard Distributing Corporation, Mark Doll and Doll Distributing Company, Scott Doll and Western Iowa Wine, Joanie Heimsoth and Dick Postels and Grinnell Beverage Company, Ron Kirchhoff and Kirchhoff Distributing Company, Inc., Charley Whittenburg Distributing, Inc., Wholesale Beer Distributors Association, and Sheila Douglas, Executive Director, Iowa Wholesale Beer Distributors, Appellants,

v.

ALCOHOLIC BEVERAGES DIVISION OF THE IOWA DEPARTMENT OF COMMERCE, Appellee.

No. 02–1762.

Supreme Court of Iowa.

May 12, 2004.

David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellants.

Thomas J. Miller, Attorney General, Julie Pottorff, Deputy Attorney General, and John R. Lundquist, Assistant Attorney General, for appellee.

WIGGINS, Justice.

The appellant, Iowa Wholesale Beer Distributors Association, is an association of more than forty beer distributors located in the State of Iowa. Appellant, Sheila Douglas, is Iowa Wholesale Beer Distributors Association's executive director. The remaining appellants are Iowa wholesale beer distributors. (We will refer to all of the appellants as "Wholesalers.") The Wholesalers sought judicial review of amended Iowa Administrative Code rule 185—16.2(2) (2000) issued by the Alcoholic Beverages Division of the Iowa Department of Commerce (ABD). The purpose of the amended rule was to further define the phrase "directly or indirectly be interested in the ownership" contained in Iowa Code section 123.45 (2001).[1] The Wholesalers claim the ABD did not have authority to issue amended rule 185—16.2(2), and if it did, the amended rule is inconsistent with the language and intent of Iowa Code section 123.45. The district court upheld the ABD's exercise of its rulemaking power. Because we disagree with the district court, we reverse its decision and hold the amended rule is an illogical interpretation of section 123.45.

## I. Background Facts and Proceedings.

Iowa Code section 123.45 provides in pertinent part:

A person engaged in the business of manufacturing, bottling, or wholesaling alcoholic beverages, wine, or beer, or any jobber, representative, broker, employee, or agent of such a person, shall not ... directly or indirectly be interest-

---

1. All references are to the 2001 Code of Iowa, unless otherwise noted.

ed in the ownership, conduct, or operation of the business of another licensee or permittee authorized under this chapter to sell at retail, nor ·hold a retail liquor control license or retail wine or beer permit.

Iowa Code § 123.45.

The original rule promulgated by the ABD to implement section 123.45 provided:

185—16.2(123) Interest in a retail establishment.

16.2(1) An industry member is prohibited, directly or indirectly, from:

a. Acquiring or holding a partial or complete ownership interest in a retail establishment.

b. Acquiring or holding an interest in the real or personal property owned, occupied or used by the retailer in the conduct of the retail establishment.

c. Acquiring a mortgage on the real or personal property owned by the retailer.

d. Guaranteeing any loan or·paying a financial obligation of the retailer, including, but not limited to, personal loans, home mortgages, car loans, operating capital obligations, or utilities.

e. Providing financial, legal, administrative or other assistance to a retailer to obtain a license or permit.

Iowa Admin. Code r. 185—16.2(1).

In August 2000, the ABD filed a notice of intended action indicating its intent to amend Iowa Administrative Code rule 185—16.2 to define "interest in the ownership" as contained in Iowa Code section 123.45 more narrowly and exclude remote corporate connections that do not affect the retail business directly or indirectly. In its notice, the ABD stated:

Over the past five years, numerous jurisdictions have examined this issue under similar statutory provisions and concluded that the corporate connection of a manufacturer, bottler, or wholesaler may be so remote that rigid application of the statutory prohibition to an applicant for a license or permit is unreasonable.

A public hearing was held to comment on the proposed rule in August 2000. Additional comments were taken at an administrative rules review committee meeting in September 2000. As a result of these meetings and comments, the proposed rule read as follows:

16.2(2) For the purposes of this rule, a subsidiary or an affiliate of an industry member shall not be considered to have any interest in the ownership, conduct or operation of a retailer provided all of the following conditions are satisfied:

a. The industry member and the retail establishment do not share any common officers or directors.

b. The industry member does not control the retail establishment.

c. The industry member is not involved, directly or indirectly, in the operation of the retail establishment.

d. The retail establishment is free from control or interference by the industry member with respect to the retailer's ability to make choices as to the types, brands and quantities of alcoholic beverages purchased and sold.

e. The retail establishment sells brands of alcoholic beverages that are produced or distributed by competing industry members with no preference given to the industry member that holds a financial interest in the retailer.

f. There is no exclusion, in whole or in part, of alcoholic beverages sold or offered for sale by competing industry members that constitutes a substantial impairment of commerce.

g. The retail establishment shall not purchase more than 20 percent of the

total annual liquor sales, 20 percent of the total annual wine sales, and 20 percent of the total annual beer sales (measured by gallons) from the industry member.

*h.* The primary business of the retail establishment is not the sale of alcoholic beverages.

*i.* All purchases of alcoholic beverages by the retail establishment are made pursuant to Iowa's three-tier system as provided for in Iowa Code chapter 123.

**16.2(3)** A retail establishment shall file verification with the alcoholic beverages division that it is in compliance with the conditions set forth in this rule upon application, renewal or request of the agency.

**16.2(4)** This rule is not subject to waiver or variance in specific circumstances.

This rule is intended to implement Iowa Code sections 123.45 and 123.186.

Iowa Admin. Code r. 185—16.2(2), (3), (4).

In November 2000, the final amended rule was submitted to the administrative rules review committee, where a member of the committee made a motion to file an objection to the ABD's revised rule on the grounds the rule exceeded the authority delegated to the ABD. On a vote of five votes in favor of the objection and five votes opposing the objection, the motion to file the objection to the rule failed to pass by operation of law. The amended rule interpreting Iowa Code section 123.45 became effective in December 2000.

The Wholesalers filed a petition for judicial review challenging the amended rule. In October 2002, the district court upheld the amendment as a valid exercise of the ABD's rulemaking authority. The Wholesalers appeal.

## II. Issues.

We must decide whether the ABD had authority to issue amended rule 185—16.2, and if it did, whether the ABD's interpretation of Iowa Code section 123.45 complies with the provisions contained in section 17A.19(10) of the Iowa Administrative Procedure Act.

## III. Standard of Review.

The Iowa Administrative Procedure Act, Iowa Code chapter 17A, governs the standards under which we review the district court's decisions on judicial review of agency action. *Locate.Plus.Com, Inc. v. Iowa Dep't of Transp.*, 650 N.W.2d 609, 612 (Iowa 2002). "The agency decision itself is reviewed under the standards set forth in section 17A.19(10)." *Mosher v. Dep't of Inspections & Appeals*, 671 N.W.2d 501, 508 (Iowa 2003). If the agency action affects the substantial rights of the person seeking judicial review and the agency's conduct meets one of the enumerated provisions contained in Iowa Code section 17A.19(10), the court shall reverse, modify, or grant other appropriate relief from the agency's action. Iowa Code § 17A.19(10).

We must apply the standards set forth in section 17A.19(10) and determine whether our application of those standards produce the same result as reached by the district court. *Mosher,* 671 N.W.2d at 508. The first standard upon which the Wholesalers challenge the agency action is on the ground that the promulgation of the amended rule by the ABD was beyond the authority delegated to the agency by any provision of law. Iowa Code § 17A.19(10)(*b*).

■ Alternatively, the Wholesalers claim that even if the ABD had authority to issue the amended rule, the ABD based the amended rule on an erroneous interpretation of the law. Iowa Code § 17A.19(10)(*c*), (*l*). If the legislature has

not clearly vested the interpretation of the statute at issue with the agency, we are free to substitute our judgment de novo for the agency's interpretation and determine if the interpretation is erroneous. Iowa Code § 17A.19(10)(c); Arthur E. Bonfield, *Amendments to Iowa Administrative Procedure Act, Report on Selected Provisions to Iowa State Bar Association and Iowa State Government* 62 (1998). If, however, the legislature has clearly vested the interpretation of the statute at issue with the agency, we will only reverse the agency's interpretation if it is "based upon an irrational, illogical, or wholly unjustifiable" interpretation of the statute at issue. Iowa Code § 17A.19(10)(*l*). Neither party claims if we find that one of the provisions in section 17A.19(10) has been met, that the action of the ABD does not affect the substantial rights of the Wholesalers.

### IV. Authority of ABD to Issue Amended Rule 185—16(2).

"An agency shall have only that authority or discretion delegated to or conferred upon the agency by law and shall not expand or enlarge its authority or discretion beyond the powers delegated to or conferred upon the agency." Iowa Code § 17A.23. The legislature delegated to the ABD the power to enforce, implement, and administer the laws concerning beer, wine and alcoholic liquor contained in chapter 123 of the code. *Id.* §§ 123.4, 546.9.

■■■ The legislature also gave the ABD the power to adopt rules as necessary to carry out the duties delegated to the ABD under Chapter 123. *Id.* § 123.21. The power conferred on an agency by the legislature to adopt rules is quite broad. *Sioux City v. Iowa Dep't of Commerce,* 584 N.W.2d 322, 325 (Iowa 1998). The legislature specifically gave the power to the ABD to adopt rules governing "the conditions and qualifications necessary for the

obtaining of licenses and permits." Iowa Code § 123.21(11). By necessity, to determine "the conditions and qualifications necessary for the obtaining of licenses and permits," the ABD must interpret the limitations on business interests as contained in section 123.45. We conclude from these statutes the legislature has clearly vested the interpretation of section 123.45 with the agency. *See Marion v. Iowa Dep't of Revenue & Fin.,* 643 N.W.2d 205, 207 (Iowa 2002) (holding a similar statute delegating rulemaking power to the Department of Revenue and Finance vested the interpretation of section 422.45(20) of the Iowa Code with the agency).

### V. The ABD's Interpretation of Iowa Code Section 123.45.

■■■ Having determined the legislature clearly vested the interpretation of section 123.45 with the ABD, we must decide whether the agency's interpretation is based upon an irrational, illogical, or wholly unjustifiable interpretation of section 123.45. Iowa Code § 17A.19(10)(*l*). The goal of statutory construction is to determine legislative intent. *State v. McCoy,* 618 N.W.2d 324, 325 (Iowa 2000). We determine legislative intent from the words chosen by the legislature, not what it should or might have said. *Painters & Allied Trades Local Union v. City of Des Moines,* 451 N.W.2d 825, 826 (Iowa 1990). Absent a statutory definition or an established meaning in the law, words in the statute are given their ordinary and common meaning by considering the context within which they are used. *Midwest Auto. III, L.L.C. v. Iowa Dep't of Transp.,* 646 N.W.2d 417, 426 (Iowa 2002). Under the guise of construction, an interpreting body may not extend, enlarge or otherwise change the meaning of a statute. *See State v. Wedelstedt,* 213 N.W.2d 652, 656 (Iowa 1973).

The parties agree the legislative intent for the enactment of section 123.45 was to maintain the independence of the various levels of the liquor industry and to prevent tied-house arrangements. *Norman Williams Co. v. Rice,* 108 Cal.App.3d 348, 166 Cal.Rptr. 563, 572, n. 3 (1980). A "tied-house" is a retail outlet that is owned or controlled by a manufacturer, wholesaler, or other entity in the chain of alcohol beverage distribution. The parties disagree whether section 123.45 leaves room for the ABD to interpret the statute to exclude remote connections between industry members and their subsidiaries or affiliates from "directly or indirectly being interested in the ownership" of a retailer of these beverages.

Amended rule 185—16.2(2) acknowledges that an industry member has an ownership interest in its subsidiary or affiliate. Iowa Admin.Code r. 185—16.2(2). By rule, however, the ABD attempts to declare that an interest of a subsidiary or affiliate in a retailer, coupled with a lack of actual control by an industry member over its subsidiary or affiliate, is not an "interest in the ownership" prohibited by section 123.45. We believe this interpretation is contrary to the language chosen and used by the legislature in section 123.45.

This court has had the occasion to construe statutes that contained language similar to the language used by the legislature in section 123.45. *James v. City of Hamburg,* 174 Iowa 301, 308–16, 156 N.W. 394, 396–99 (1916). In *James,* the statutes in question provided:

> No member of any council shall . . . be interested, directly or indirectly, in any contract or job for work, or the profits thereof, or services to be performed for the corporation.

and

> No officer or employee elected or appointed in any such city shall be interested, directly or indirectly, in any contract or job for work or materials, or the profits thereof, or services to be furnished or performed for the city.

174 Iowa at 310, 156 N.W. at 397 (quoting Iowa Code § 668.14 (1897) and Iowa Code § 1056–a31 (1907)). In construing the phrase "interested, directly or indirectly," the court determined "[t]he fact that the interest of the offending officer in the invalid contract is indirect and is very small, is immaterial." *James,* 174 Iowa at 312–13, 156 N.W. at 397 (citation omitted).

At the time the ban on tied-house arrangements was enacted, the legislature drew a bright-line rule defining the allowable relationship between a manufacturer, wholesaler or other entity in the chain of alcohol beverage distribution and the retailer of these beverages. By choosing the language "directly or indirectly be interested in the ownership," the legislature meant to prohibit any ownership interest, no matter how remote or de minimis, by a manufacturer, wholesaler, or other entity in the chain of alcohol beverage distribution and the retailer of these beverages.

Since its enactment, the statute prohibiting tied-house arrangements has been amended at least six times. The original statute prohibiting tied-house arrangements was enacted at the end of prohibition and prohibited tied-house arrangements between beer manufacturers, bottlers, wholesalers, their jobbers, or agents with retailers. Iowa Code § 1921–f115 (1935). In 1963, the legislature further restricted tied-house arrangements by adding manufacturers, wholesalers, their jobbers, or agents of *alcoholic beverages* to the ban on tied-house arrangements. Iowa Code § 123.40 (1966). In 1981, the legislature made an exception to tied-house arrangements for manufacturers of beer to obtain one class "B" permit to sell beer at

retail off of their premises. Iowa Code § 123.45 (1983). In 1985, the legislature further restricted tied-house arrangements by adding manufacturers, wholesalers, their jobbers, or agents of *wine* to the ban on tied-house arrangements. Iowa Code § 123.45 (1987). Finally, in 1988 the legislature further restricted tied-house arrangements by adding *a representative, broker or employee* of a manufacturer or wholesaler of alcoholic beverages, wine, or beer to the ban against tied-house arrangements. Iowa Code § 123.45 (1989). The legislature also amended this section in 1982 and 1991, but neither amendment concerned tied-house arrangements. *See* Iowa Code § 123.45 (1983) (amending provision dealing with prohibited act of certain state officials and employees); Iowa Code § 123.45 (1993) (permitting disposable glassware to be provided to retailers by a manufacturer or wholesaler of alcoholic beverages, wine, or beer under certain conditions).

In 1981, the legislature enacted a limited exception to the ban against tied-house arrangements as it applied to manufacturers of beer. If the legislature wanted to exclude remote connections between industry members, their subsidiaries or affiliates, and retailers of these beverages, it would have done so by amendment. *See RIHGA Int'l U.S.A., Inc. v. New York State Liquor Auth.*, 84 N.Y.2d 876, 620 N.Y.S.2d 784, 644 N.E.2d 1340, 1341–42 (1994) (holding state liquor authority did not have discretion, under statute prohibiting liquor manufacturer or wholesaler from holding interest, directly or indirectly, in premises where any alcoholic beverage is sold at retail, to issue license to owner of hotel in which three unrelated manufacturers of alcohol products indirectly held ownership interests totaling less than ten percent, notwithstanding conten-

tion that manufacturers' interests were de minimis).

The interpretation given to Iowa Code section 123.45 by the ABD in amended rule 185—16.2 is based upon an illogical interpretation of section 123.45. A remote or de minimis ownership interest is an indirect ownership interest, which is prohibited by the statute. In essence, the ABD ignored the phrase "indirectly be interested in ownership" as used by the legislature in section 123.45. For these reasons, we agree with the Wholesalers that Iowa Code section 123.45 does not permit the ABD to promulgate a rule allowing a tied-house arrangement between industry members, their subsidiaries or affiliates, and retailers, when the relationship is remote or de minimis.

In its notice of intended action, the ABD noted that numerous jurisdictions have examined this issue under similar statutory provisions and concluded a rigid application of the laws preventing tied-house arrangements when the corporate connections were remote was unreasonable. In the jurisdictions cited by the ABD where the interpretation was made by an attorney general opinion, declaratory statement of the agency, or an informal letter from the agency, the interpretation by the attorney general or the agency was not challenged in a subsequent court proceeding. We are sympathetic to the ABD's position that modern corporate relationships not anticipated by the legislature when these statutes were enacted may unnecessarily exclude desirable operators of retail establishments from locating their businesses in Iowa. Nevertheless, it is best left up to the legislature to determine if this policy is out-dated, not the ABD.

## VI. Disposition.

Because we conclude amended rule 185—16.2(2) is an illogical interpretation of

Iowa Code section 123.45, the district court erred in upholding the rule. Accordingly, we reverse the decision of the district court upholding the ABD's exercise of its rulemaking power, declare the amended rule null and void, and remand the case to the district court, which must then return the case to the ABD for rule-making proceedings in compliance with the provisions of the Iowa Administrative Procedure Act.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**