CADY, Chief Justice
(dissenting).
Respectfully, I dissent. Our legislature intended for the Final Disposition Act to designate and,empower a line of authority to make the decisions pertaining to the arrangements for the funeral and final disposition of the remains of a person who has died. The statute did not intend to replace the timeless and fundamental ability of people to otherwise make those decisions for themselves and preserve them in their last will and testament, with the full measure of peace and confidence that they would be honored after death, so as to avoid any disputes and make it unnecessary for others to make the decisions.
The Final Disposition Act was a practical response by our legislature to a very real problem. As in this case, family members and others can unfortunately disagree following the death of a person over the funeral arrangements and final disposition of the body. See Alcor Life Extension Found. v. Richardson, 785 N.W.2d 717, 727 (Iowa Ct.App.2010) (recognizing the Act sought to provide clarity about who would determine issues over the final disposition of a person’s remains after death). To resolve these disputes, the legislature simply designated a line of people empowered to make these decisions to the exclusion of every other living person. The order of this line of authority is based on logic and natural symmetry. Consistent with this approach, this line of authority begins with the person who the dece *195 dent has designated pursuant to the Act to make the decisions. Importantly, this des-ignee — and every other person in the line of authority — becomes the sole decision maker and the person who has made the designation is not allowed to include any specific directives to bind the decision of the designee. Iowa Code § 144C.3(2) (2011). The Act explicitly gives each person in the line of authority the sole responsibility and discretion to make the decision after the death of the person. Id. The Act is totally independent of the autonomy of a person to make his or her own decision prior to death. The legislature sought only to resolve disputes that occur when a decedent leaves no directions behind, not deprive decedents of the right to make the decisions.
Our task in interpreting statutes is to give effect to the intent of the legislature. Andover Volunteer Fire Dep’t v. Grinnell Mut. Reins. Co., 787 N.W.2d 75, 81 (Iowa 2010). To carry out this duty, we discern the intent of the legislature from the words and content of the statute, as well as its purpose. Auen v. Alcoholic Beverages Div., 679 N.W.2d 586, 590 (Iowa 2004). Within the framework of the Final Disposition Act, these factors all reveal the statute has no application if a testator has provided his or her own directives. First, the Act exists only to resolve disputes. When a testator has provided advance directives, the directives eliminate any dispute, and the statute has no application. When we interpret statutes, we seek to effectuate their purpose and fix the problem sought to be remedied. Lee v. Grinnell Mut. Reins. Co., 646 N.W.2d 403, 407 (Iowa 2002). We do not interpret statutes to address matters that are not part of the problem sought to be fixed by any legislature.
Second, the designation scheme under the statute exists only to allow the decedent to designate a person to be placed ahead of the natural order of decision makers designated by the legislature. This process is totally unrelated to the independent power of the testator to direct his or her own funeral arrangements and final disposition of remains. The two approaches operate independently with perfect harmony. As with the disposition of property by decedents, the two approaches allow a person to make his or her own arrangements by making declarations in a will or to allow for decisions that must be made following death to be decided by the statutory scheme. Thus, the implementation of a legislative scheme for a decedent to establish a decision maker does not preclude the more fundamental ability of a testator to preempt the operation of the Final Disposition Act by making the relevant decisions for himself or herself prior to death.
Finally, I am confident our legislature did not intend to deprive a testator of the right of self-determination by requiring testators to designate a person to make these personal determinations after death without the ability to provide any direction. Our society has justifiably attached deep significance and meaning to the final wishes expressed by people. These intentions are often intimate and sensitive, dealing not just with finances or property, but delicate personal matters, including the transition from the corporal to the spiritual. For centuries the last expression of bodily autonomy has been received with solemnity and honored by our laws to the fullest practical extent when declared with the formality of the last will and testament. See Thompson v. Deeds, 93 Iowa 228, 231, 61 N.W. 842, 843 (1895) (“[I]t always has been, and ever will continue to be, the duty of courts to see to it that the expressed wish of one, as his final resting place, shall, so far as it is possible, be carried out.”). Last wishes are sacrosanct, and every law or statute *196 concerning last wishes has been constructed solidly upon this fundamental, common understanding. We strive to interpret statutes consistent with the common law unless the language of the statute “clearly” negates the common law. State v. Carter, 618 N.W.2d 874, 377 (Iowa 2000). This statute did not clearly negate our rich common law that has always protected our last wishes to claim our final resting place. This statute is no exception.
I am confident our legislature did not intend the result of this case, nor to render future generations of Iowans powerless to direct for themselves their funeral arrangements and final disposition of their remains.
ZAGER, J., joins this dissent.