# IN THE SUPREME COURT OF IOWA

No. 18–0353

Filed February 14, 2020

**MARK B. IRLAND,**

Appellant,

vs.

**IOWA BOARD OF MEDICINE,**

Appellee.

_____

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Physician seeks further review of the decision of the court of appeals that affirmed the district court's dismissal of his petition for judicial review of the Iowa Board of Medicine's "Confidential Warning Letter" imposing conditions on his return to practice. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

David L. Brown and Tyler R. Smith of Hansen, McClintock & Riley, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Jordan G. Esbrook (until withdrawal) and Anagha Dixit, Assistant Attorneys General, for appellee.

**WATERMAN, Justice.**

In this appeal, we must determine whether the Iowa Board of Medicine can use a "Confidential Letter of Warning" to impose conditions on a physician's return to the practice of medicine over his objection, without a finding of probable cause, and without judicial review.

The Board opened its investigation into an emergency room physician after the death of a patient in his care. The physician voluntarily ceased practicing medicine. The Board closed its investigation without a finding of probable cause that the physician had violated any rule or standard of practice, which is a prerequisite to imposing discipline. Yet the Board issued a letter telling the physician that if he returns to practicing medicine, the Board will order him to "complete a comprehensive clinical competency evaluation." The physician filed a petition for judicial review alleging the Board's letter constituted illegal agency action. The Board moved to dismiss, arguing that its action is unreviewable because it imposes no present discipline, closes the Board's investigation, and any future action is not ripe for review. The district court agreed and granted the Board's motion to dismiss. The court of appeals affirmed the dismissal while acknowledging that the Board's action prevented the physician from freely resuming his practice. We granted the physician's application for further review.

On our review, we determine the district court erred by ruling the Board's letter was not judicially reviewable. The Board lacks the statutory authority to impose discipline without finding probable cause of a violation and without giving the physician an opportunity to challenge the alleged violation. The warning letter effectively imposed discipline—the competency evaluation—should the physician return to practice. The Board thereby circumvented the due process safeguards and public

reporting requirements codified in the governing statutes. We vacate the decision of the court of appeals, reverse the district court's dismissal ruling, and remand with directions for the district court to order the Board to rescind the offending provisions in this letter without prejudice to the Board's ability to reopen its investigation into the physician's conduct.

## I. Background Facts and Proceedings.

Dr. Mark B. Irland, a licensed physician who practiced primarily in Marengo, Iowa, received a "Confidential Letter of Warning" from the Iowa Board of Medicine dated November 29, 2017. As the state agency responsible for licensing and regulating physicians who practice medicine in Iowa, the Board has the authority to investigate complaints against physicians and impose disciplinary sanctions. *See* Iowa Code § 272C.3 (2017).

The Board sent Dr. Irland the letter after reviewing a complaint about his medical care. The Board's letter raised "serious concerns" regarding his treatment of a twenty-nine-year-old male patient who died after Dr. Irland "failed to recognize the seriousness of [the patient's] medical condition[,] ignored the concerns of other health care professionals involved in his treatment," and "failed to transfer him for over six hours" despite the seriousness of his condition. The Marengo Memorial Hospital conducted an internal investigation and revoked Dr. Irland's clinical privileges for emergency medicine "due to serious concerns about [his] clinical competency, inadequate medical record keeping and poor documentation, disruptive behavior and unprofessionalism, and substandard care which may have contributed to a catastrophic patient outcome." Dr. Irland appealed the hospital's disciplinary determination, and the hospital upheld the revocation.

The Board's letter echoed the hospital's concerns and "advise[d]" Dr. Irland "to carefully review [his] treatment" of the patient, "take appropriate steps to avoid similar concerns in the future," and "submit a paper to the Board describing what [he] learned from this matter" within sixty days. The letter continues, in relevant part,

> The Board also noted that you are not practicing medicine at this time. Therefore, the Board has chosen not to initiate further action in this matter at this time. However, the Board advises that you provide it written notice at least sixty (60) days prior to returning to the practice of medicine. *If you choose to return to the practice of medicine, the Board will take appropriate action, including but not limited to, issuing an order requiring you to complete a comprehensive clinical competency evaluation,* to ensure that you are able to practice medicine with reasonable skill and safety. While the Board has chosen not to pursue formal disciplinary action in this matter at this time, please note that failure to conform to the minimal standard of care in the future may be grounds for formal disciplinary action against your Iowa medical license.

> Pursuant to Iowa Code chapter 272C, this **CONFIDENTIAL LETTER OF WARNING** does not constitute a formal disciplinary action, nor is it a public record. . . .

> This **CONFIDENTIAL LETTER OF WARNING** concludes the Board's investigation of this case. The Board reserves the right to review and reconsider this matter should it be deemed appropriate.

(Emphasis added.) The Board sent its confidential letter to Dr. Irland without his consent, without charging him with any disciplinary violation, without opening contested case proceedings, and without any finding of probable cause that Dr. Irland committed a violation.

On December 29, Dr. Irland filed a petition for judicial review, asserting that the letter constituted illegal agency action under Iowa Code section 17A.19. The Board filed a motion to dismiss pursuant to Iowa Code section 272C.3(1)(*d*), which states, "Notwithstanding the provisions of [Iowa Code] chapter 17A, a determination by a licensing board that an investigation . . . should be closed without initiating a disciplinary

proceeding is not subject to judicial review pursuant to section 17A.19." On February 16, 2018, the district court determined that the letter's "advisory and warning language" were not disciplinary sanctions that transformed it into a final agency action subject to judicial review. As such, the district court concluded it was without authority to review the letter and granted the Board's motion to dismiss. Dr. Irland appealed, and we transferred the case to the court of appeals.

On March 6, 2019, the court of appeals affirmed. The court of appeals "acknowledge[d] the letter of warning is colored with advisories that have the appearance of sanctions," but it found the letter did not amount to sanctions because there were no mandatory actions and no identifiable repercussions if Dr. Irland did nothing (that is, if he never resumed practicing medicine). Yet the court of appeals recognized the letter effectively prevented Dr. Irland from again practicing medicine without meeting the Board's conditions.

> At oral argument, the Board acknowledged the letter sent to Irland was "a hybrid" because it did not inform him of what the Board *may* do in the future but what it *will* do, essentially freezing Irland in his current status of not practicing medicine in the State of Iowa. ("[T]he Board *will* take appropriate action, *including* . . . .") But, by issuance of this hybrid letter of warning, the Board has effectively concluded there was no probable cause to file disciplinary charges. [Iowa Admin. Code] r. 653—24.2(5)(*e*). In light of these rules, we conclude the letter's reference to the competency evaluation is a threat without teeth because the Board may not enter such an order without reconsideration of its prior decision, making a probable-cause determination, and affording due process to Irland, including a contested-case hearing. Thus, we do not view the unconventional letter as a sanction or a form of disciplinary action.

(First alteration in original.) The court of appeals determined that the letter was not subject to judicial review because Dr. Irland had not been

adversely affected by a final agency action given that nothing the Board "advised" in the letter resulted in Board action or sanctions.

We granted Dr. Irland's application for further review.

**II. Standard of Review.**

We review a district court's dismissal of a petition for judicial review for correction of errors at law. *LSCP, LLLP v. Kay-Decker*, 861 N.W.2d 846, 854 (Iowa 2015). "We apply the standards set forth in the Administrative Procedure Act, Iowa Code ch. 17A, to determine whether our conclusions are the same as those of the district court." *Doe v. Iowa Bd. of Med. Exam'rs*, 733 N.W.2d 705, 707 (Iowa 2007).

The Board acted without commencing contested case proceedings. Accordingly, "[t]he board's action in this case constitutes 'other agency action,' and as such, we review to determine whether the board committed an error of law, or acted unreasonably, capriciously, or arbitrarily." *Id.* "Agency action is considered arbitrary or capricious when the decision was made 'without regard to the law or facts.' " *Id.* (quoting *Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 831 (Iowa 2002)).

**III. Analysis.**

We must decide whether Dr. Irland is presently entitled to judicial review of the Board's letter that requires him to undergo a competency evaluation if he resumes practicing medicine. The Board argues, and the court of appeals and district court agreed, that the confidential letter is not a reviewable final agency action because Dr. Irland has not yet been adversely affected and any future discipline is not ripe for review. We disagree. In our view, the letter by its plain language presently restricts Dr. Irland's ability to return to practicing his profession. The Board's letter makes clear it "will order" the competency evaluation should he resume practicing medicine. The Board cannot use a "confidential letter of

warning" to sidestep procedural requirements for imposing and reporting discipline.

We begin by reviewing the Board's authority to impose and report on disciplinary violations. "Chapter 272C was enacted, in part, to protect the public safety by ensuring competency in the medical profession. The board is given broad discretion and great responsibility to fulfill this goal." *Doe*, 733 N.W.2d at 712. The Board is authorized under Iowa Code section 272C.3 to investigate complaints against licensees and issue licensee discipline. In doing so, the Board is subject to its own rules. *See Auen v. Alcoholic Beverages Div. of the Iowa Dep't of Commerce*, 679 N.W.2d 586, 590 (Iowa 2004) (stating that the enabling act and rules constrain the agency's authority).

The Board's procedure for processing complaints and conducting investigations is outlined in Iowa Administrative Code 653—24.2. The Board begins by opening a complaint file upon receiving "appropriate information." Iowa Admin. Code r. 653—24.2(1). If the Board has jurisdiction over the complaint, the matter is assigned to its complaint review committee. *Id.* r. 653—24.2(1)(*a*). The complaint review committee, pursuant to the guidelines set out in rule 653—24.2(2)(*c*), then reviews the complaint and may take one of four actions: (1) close the complaint file for specified reasons, (2) recommend that the Board's screening committee close the file without an investigation, (3) "[r]equest an investigation by seeking a letter of explanation from the physician, medical records, or both," or (4) "[r]equest a full investigation." *Id.* r. 653—24.2(2)(*b*), (*c*). The complaint review committee's recommendation is then reviewed by a screening committee that may take one of four actions: (1) recommend that the Board close the complaint file without conducting an investigation; (2) "[r]equest an investigation by seeking a letter of explanation from the

physician, medical records, or both"; (3) review any letters of explanation received and recommend that the Board close the investigative file with or without issuing an informal letter; or (4) "[r]equest a full investigation for board review." *Id.* r. 653—24.2(3).

Finally, the Board reviews the screening committee's recommendations. After its review, the Board may (1) "[c]lose the complaint file without investigation[;]" (2) "[c]lose the investigative file that has been partially or fully investigated, with or without issuing an informal letter[;]" or (3) "[r]equest further investigation." *Id.* r. 653—24.2(4). Investigations are conducted pursuant to rule 653—24.2(5). If an investigation occurs, the Board reviews the investigative record and may take one of several actions. *Id.* r. 653—24.2(5)(*e*). The Board may (1) close the investigative file without taking action; (2) "[r]equest further investigation, including peer review;" (3) meet with the licensee to discuss the pending investigation; (4) "[i]ssue an informal letter of warning or education;" (5) file a statement of charges, which commences a contested case proceeding; or (6) "[r]equest a combined statement of charges and settlement agreement." *Id.* r. 653—24.2(5)(*e*)(1)–(6).

The Board argues that its letter to Dr. Irland is a valid letter of warning under Iowa Administrative Code rule 653—24.2(5)(*e*)(4), which states,

> If the board concludes that there is *not probable cause* to file disciplinary charges, the board may issue the licensee an informal letter of warning or education. A letter of warning or education is an informal communication between the board and the licensee and *is not formal disciplinary action* or a public document.

(Emphasis added.) As such, the Board asserts its letter to Dr. Irland is not a "formal disciplinary action" subject to judicial review. Dr. Irland contends the letter actually imposes discipline. We agree with Dr. Irland.

The Board's letter went beyond mere warnings, and it made clear that if Dr. Irland resumes practicing medicine, then he must undergo the competency evaluation. The Board effectively imposed conditional discipline without formal action or a finding of probable cause. We conclude the Board's letter exceeds the scope of rule 24.2(5)(*e*)(4).

We have recognized that the legislature may by statute expressly exempt certain agency actions from judicial review under chapter 17A. *Lewis Cent. Educ. Ass'n v. Iowa Bd. of Educ. Exam'rs*, 625 N.W.2d 687, 691 (Iowa 2001) (en banc). Iowa Code section 272C.3(1)(*d*) is such a statute, which allows the Board to "[d]etermine in any case whether an investigation, or further investigation, or a disciplinary proceeding is warranted." Further, this statute explicitly states that the Board's decision to close an investigation without instituting disciplinary proceedings is not subject to judicial review.

> Notwithstanding the provisions of chapter 17A, a determination by a licensing board that an investigation is not warranted or that an investigation should be closed without initiating a disciplinary proceeding is not subject to judicial review pursuant to section 17A.19.

Iowa Code § 272C.3(1)(*d*). The Board relied on section 272C.3(1)(*d*) in its motion to dismiss and asserted that judicial review is unavailable because it closed the investigation without initiating a disciplinary proceeding. The district court and the court of appeals concluded this statute foreclosed judicial review of the Board's letter to Dr. Irland.

Their determinations, in our view, rest on a flawed premise—that the letter to Dr. Irland imposed no discipline. The letter by its terms de facto disciplined Dr. Irland by requiring a competency evaluation if he returns to the practice of medicine. We will not allow licensing boards to evade judicial review by placing disciplinary action within a "confidential

letter of warning" that purports to close the investigation without initiating a disciplinary proceeding. To do so elevates form over substance and, in fact, allows discipline to be imposed without the procedural safeguards of contested case proceedings and without the reporting obligations that safeguard the public by disclosing disciplinary actions.

When, as here, the Board's letter actually imposes discipline, section 272C.3(1)(*d*) does not apply to preclude judicial review. "Licensee discipline" is defined as "any sanction a licensing board may impose upon its licensees for conduct which threatens or denies citizens of this state a high standard of professional or occupational care." *Id.* § 272C.1(4). Section 272C.3(2) delineates permissible sanctions to be imposed as licensee discipline apart from revocation and suspension of licenses, including requiring "additional professional education or training, *or reexamination,* or any combination, as a condition precedent to the reinstatement of a license or of any privilege incident thereto." *Id.* § 272C.3(2)(*d*) (emphasis added). Indeed, a clinical competency examination is such a form of discipline. Iowa Admin. Code r. 653—25.25(1)(*g*). The Board's letter effectively imposed such discipline requiring Dr. Irland to undergo a competency evaluation if he resumes practicing medicine.

In our view, the Board's action violated its own rules. Rule 653—24.4 governs the procedure for ordering a competency evaluation. *Id.* r. 653—24.4. The rule requires that the Board issue an order that specifies the "showing by the board that there is probable cause to order the licensee to complete an evaluation." *Id.* r. 653—24.4(1)(*a*). The order must identify the nature of the evaluation, the facility to perform the evaluation, and the time to complete it. *Id.* r. 653—24.4(1)(*b*)–(*e*). The physician has a right to object to the evaluation order through a contested

case hearing. *Id.* r. 653—24.4(3). Here, the Board is requiring a competency evaluation upon Dr. Irland's return to practice without any finding of probable cause and without allowing him to object through the procedure outlined in the Board's own rule.[1]

We recognize that the Board and a physician can agree to disciplinary measures through an informal settlement and without a contested case procedure. *See* Iowa Code § 272C.3(4)(*a*).[2] But Dr. Irland never consented to the discipline imposed in the Board's confidential letter.

We agree with the court of appeals that the Board's letter effectively "freezes" Dr. Irland from practicing medicine. The Board's clear statement that it *will* take action against Dr. Irland if he tries to return to the practice of medicine amounts to a sanction.

> If you choose to return to the practice of medicine, the Board *will* take appropriate action, including but not limited to, issuing an order requiring you to complete a comprehensive clinical evaluation, to ensure you are able to practice medicine with reasonable skill and safety.

---

[1]The Board's letter also states,

> The Board . . . advises that you submit a paper to the Board describing what you have learned from this matter. Please submit the paper to [the Legal Director of the Board of Medicine] within sixty (60) days of this letter.

The Board cites no authority for this seemingly mandatory directive: "Please submit the paper . . . within sixty (60) days . . . ." As with the competency evaluation, we question the Board's authority to require a physician to submit a potentially self-incriminating letter when at the same time the Board is declining to conduct an actual investigation.

[2]Iowa Code section 272C.3(4)(*a*) provides,

> Nothing contained in this section shall be construed to prohibit informal stipulation and settlement by a board and a licensee of any matter involving licensee discipline. However, licensee discipline shall not be agreed to or imposed except pursuant to a written decision which specifies the sanction and which is entered by the board and filed.

(Emphasis added.) In fact, it is a sanction specifically listed in the Administrative Code under rule 653—25.25(1)(*g*). While the Board does have the authority to impose the sanction of a clinical competency evaluation, it may do so over the physician's objection only after a contested case proceeding. *See id.* r. 653—25.25. Dr. Irland never received a contested case hearing. The Board bypassed the requisite statement of charges and contested case hearing and instead imposed discipline within a confidential letter of warning. The letter effectively requires Dr. Irland to undergo a competency evaluation if he resumes practicing medicine. The Board's action has no support in its governing statute or administrative rules.

Imposing discipline through a confidential letter of warning circumvents several reporting requirements. To protect the public from incompetent physicians, board-imposed discipline is a public record. *See* Iowa Code § 272C.3(4)(*b*) ("All health care boards shall file written decisions which specify the sanction entered by the board with the Iowa department of public health which shall be available to the public upon request."); *id.* § 272C.6(4)(*a*) (A decision imposing discipline is a public record.); *Board Overview*, Iowa Bd. of Med., https://medicalboard.iowa.gov/Board-overview [https://perma.cc/JQ5X–9DFX] ("[T]he [B]oard is charged with enforcing these rules and laws to protect the public from licensees who do not practice medicine and acupuncture within prevailing and acceptable standards of the practices . . . ."). The public can access this information through a search engine on the Board's website that is available to "find or verify physicians" where "[l]icensing details, including public disciplinary action or sanctions taken by the Iowa Board of Medicine against a license, will be displayed." *Find a Physician Search Engine,* Iowa

Bd. of Med., https://eservices.iowa.gov/PublicPortal/Iowa/IBM/ licenseQuery/LicenseQuery.jsp?Profession=Physician (last visited Feb. 10, 2020).

Federal law also requires that regulators disclose discipline through an adverse action report to the National Practitioner Data Bank (NPDB). *See Costa v. Leavitt*, 442 F. Supp. 2d 754, 755–56 (D. Neb. 2006) (reviewing federal NPDB reporting requirements); *see, e.g., Leo v. Bd. of Med. Exam'rs*, 586 N.W.2d 530, 532 (Iowa Ct. App. 1998) (noting physician's discipline was reported to the NPDB).

The Board must report adverse licensure actions to the NPDB,[3] and hospitals and other health care entities must report adverse clinical privileges actions. Health Res. & Servs. Admin., U.S. Dep't of Health & Human Servs., *NPDB Guidebook* E-31 to E-34, E-63 to E-66 (Oct. 2018), https://www.npdb.hrsa.gov/resources/ aboutGuidebooks.jsp; *NPDB Reporting Requirements and Query Access*, U.S. Dep't of Health & Human Servs., https://www.npdb.hrsa.gov/resources/tables/reportingQueryAccess.jsp

---

[3]Adverse licensure actions that the Board must report include

> [a]ny adverse action taken by the state licensing or certification authority as a result of a formal proceeding, including: revocation or suspension of a license, certification agreement, or contract for participation in a government health care program; reprimand; censure; or probation.

Health Res. & Servs. Admin., U.S. Dep't of Health & Human Servs., *NPDB Guidebook* E-63 (Oct. 2018), https://www.npdb.hrsa.gov/resources/aboutGuidebooks.jsp. Additionally, the Board must report, among other things,

> [a]ny negative action or finding by the state licensing or certification authority that, under the state's law, is publicly available information, including, but not limited to, limitations on the scope of practice, liquidations, injunctions, and forfeitures. This definition also includes final adverse actions rendered by a state licensing or certification authority – such as exclusions, revocations, or suspension of license or certification – that occur in conjunction with settlements in which no finding of liability has been made (although such a settlement itself is not reportable).

*Id.* at E-64.

14

[https://perma.cc/KG9M-6LN8]. Although NPDB reports are not available to the public, they are accessible to state licensing boards and health care entities. *NPDB About Us*, U.S. Dep't of Health & Human Servs., https://www.npdb.hrsa.gov/topNavigation/aboutUs.jsp [https://perma.cc/NG47-T4GD].

> In fact, hospitals are required to request information from the NPDB whenever a physician applies for a position on its medical staff or for clinical privileges, and also every two years to check the status of each physician who currently is on its medical staff or has clinical privileges.

*Costa*, 442 F. Supp. 2d at 756. The NPDB serves as a valuable "workforce tool that prevents practitioners from moving state to state without disclosure or discovery of previous damaging performance." *NPDB About Us*, U.S. Dep't of Health & Human Servs. (stating the NPDB's mission is "[t]o improve health care quality, protect the public, and reduce health care fraud and abuse in the U.S.").

Cloaking discipline within confidential warning letters undermines the public's right to know when a physician's competence has been called into question by a licensing board. We note Dr. Irland is not currently practicing medicine. What stops him from practicing in another state without undergoing the competency evaluation that the Iowa Board of Medicine ordered in secret? Conversely, why shouldn't Dr. Irland be able to presently challenge the obstacle the Board has imposed on his right to practice?

We next turn to whether the Board's confidential letter is subject to judicial review under Iowa Code section 17A.19. "Except as expressly provided otherwise by another statute referring to this chapter by name," section 17A.19 is the "exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review

of such agency action." Iowa Code § 17A.19. Under section 17A.19(1), "[a] person or party who has exhausted all adequate administrative remedies and who is aggrieved or adversely affected by any final agency action is entitled to judicial review thereof under this chapter." *Id.* § 17A.19(1). "Agency action" is defined in chapter 17A as

> includ[ing] the whole or a part of an agency rule or other statement of law or policy, order, decision, license, proceeding, investigation, sanction, relief, or the equivalent or a denial thereof, or a failure to act, or any other exercise of agency discretion or failure to do so, or the performance of any agency duty or the failure to do so.

*Id.* § 17A.2(2). "Under Iowa Code section 17A.23, all agency action is subject to the Iowa Administrative Procedure Act, and thus to the judicial-review provisions of section 17A.19." *Lewis Cent. Educ. Ass'n*, 625 N.W.2d at 691; *see also* Iowa Code § 17A.23.

We determine the Board's letter constitutes "agency action" under section 17A.2(2). The Board has the authority to discipline a physician after reviewing the investigative record, and it has discretion to determine the proper action to be taken. *See* Iowa Admin. Code r. 653—24.2(5)(*e*). The Board's decision to impose sanctions for a licensee's misconduct is "within the statutory mandate of the agency [and is] peculiarly within its discretion and area of expertise. Clearly, then, such matters constitute agency action." *Genetzky v. Iowa State Univ.*, 480 N.W.2d 858, 861 (Iowa 1992). We also determine that the Board's letter constitutes final agency action given that it "conclude[d] the Board's investigation of this case" and imposed discipline without any path for Dr. Irland to appeal within the agency. The Board has not identified any existing administrative remedies available to challenge its letter that Dr. Irland failed to exhaust. Given the Board's position that its conditional future discipline was not ripe for review, any effort by Dr. Irland to seek relief within the agency would have

been futile. We conclude Dr. Irland was aggrieved or adversely affected by the Board's action because he is unable to resume practicing his chosen profession without triggering the competency evaluation.

We hold the Board's letter is subject to judicial review under Iowa Code section 17A.19(1). The district court erred by granting the Board's motion to dismiss.

## IV. Disposition.

For the foregoing reasons, we vacate the decision of the court of appeals and reverse the district court's dismissal ruling. We remand this case for entry of an order by the district court directing the Board to rescind the provisions in its confidential letter of warning that require a competency evaluation upon Dr. Irland's return to practicing medicine. Nothing in this opinion precludes the Board from reopening its investigation into Dr. Irland's conduct and following proper procedures to determine if discipline is warranted.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except McDonald, J., who takes no part.