# IN THE SUPREME COURT OF IOWA

No. 19–0939

Filed April 3, 2020

**STATE OF IOWA,**

Appellee,

vs.

**CHARLES EDWARD ROSS,**

Appellant.

---

Appeal from the Iowa District Court for Cerro Gordo County, Karen Kaufman Salic, Judge.

A defendant appeals his conviction for possession of a tool with the intent to use it in the unlawful removal of a theft detection device, arguing there was not a factual basis to support his guilty plea. **SENTENCE VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**

Dylan J. Thomas, Mason City, for appellant.

Thomas J. Miller, Attorney General, Katie Krickbaum, Assistant Attorney General, Carlyle Dalen, County Attorney, and James O'Hollearn, Assistant County Attorney, for appellee.

**CHRISTENSEN, Chief Justice.**

The dispositive issue in this case is whether a padlock secured to a steel cable constitutes a "theft detection device" under Iowa Code section 714.7B(3) (2018). Among other charges, the defendant pled guilty to possessing a tool with the intent to use it in the unlawful removal of a theft detection device under section 714.7B(3) after he was found in possession of bolt cutters that he used to cut the padlock off of a steel cable wrapped around a riding lawn mower on display outside of a Mills Fleet Farm. He now argues his trial counsel was ineffective for allowing him to plead guilty to this charge because the padlock-steel cable combination was not a "theft detection device" under the statute. Thus, the defendant maintains there was no factual basis to support his guilty plea to this charge. We agree.

## I. Background Facts and Proceedings.

Around 4:00 a.m. on September 24, 2018, Charles Ross and his codefendant, Calvin Lacey, arrived at a Mason City Mills Fleet Farm in a Penske rental truck. Ross used bolt cutters to cut the padlock off of the steel cable that was wrapped around a riding lawn mower on display outside of the store. He then helped Lacey load the lawn mower onto the rental truck without permission to take the lawn mower or the intention to return it to its lawful owner. As they were loading the lawn mower onto the rental truck, a Mills Fleet Farm employee who was arriving for work observed them and called the police. Ross and Lacey fled, but police located them and conducted a traffic stop of their vehicle shortly thereafter. The police searched the vehicle pursuant to a search warrant and discovered bolt cutters, the lawn mower from the Mason City Mills Fleet Farm, a ski mask, and methamphetamine, among other items.

On October 5, 2018, the State charged Ross by trial information with theft in the second degree, a class "D" felony, in violation of Iowa Code sections 714.1 and 714.2(2); possession of a "tool, instrument or device to remove [a] theft detection shielding device," a serious misdemeanor, in violation of Iowa Code section 714.7B(3);[1] and first offense of possession of methamphetamine, a serious misdemeanor, in violation of Iowa Code section 124.401(5). Ross filed a motion to dismiss his possession of methamphetamine charge, which the district court subsequently denied on January 22, 2019. On February 15, the State filed an amended trial information to add a habitual offender enhancement to Ross's theft charge. On April 1, the State and Ross reached a plea agreement in which the State agreed to drop the habitual offender enhancement to Ross's theft charge and jointly recommend a seven-year term of incarceration in exchange for Ross's guilty plea to theft in the second degree; possession of a tool, instrument, or device with the intent to use it to unlawfully remove a theft detection device; and possession of methamphetamine.

With Ross's consent, the district court relied on Ross's written plea of guilty and the minutes of testimony to accept his plea to the two misdemeanor charges, including the charge of possession of a tool, instrument, or device with the intent to use it to unlawfully remove a theft detection device in violation of Iowa Code section 714.7B(3).[2] In relevant

---

[1] During the district court proceedings, the charge at issue on appeal was described in varying ways, such as possession of a tool to remove "a theft detection shielding device" and "possession of a theft detection device." However, the parties agree that Ross ultimately pled guilty to the terms of Iowa Code section 714.7B(3) and that the issue on appeal concerns the interpretation of "theft detection device" under section 714.7B(3).

[2] Pursuant to Iowa Rule of Criminal Procedure 2.8(2)(*b*) and our caselaw, the district court has the discretion to waive the in-person colloquy with the defendant in nonfelony cases if the defendant approves, "so long as [the] written guilty plea adequately provides the court sufficient information from which the court can make a finding that the

part, Ross admitted in his written plea that "on or about September 24, 2018, in Cerro Gordo County, IA[, he] possessed a tool, instrument, or device with the intent to use it in the unlawful removal of a theft detection device and the value of the items exceed[ed] $200.00." (Emphasis omitted.) After an in-person colloquy concerning Ross's felony charge of theft in the second degree, the district court sentenced Ross to three consecutive sentences totaling seven years. This included a 365-day term in jail for his conviction of possession of a tool to remove a theft detection device with associated fines and surcharges.

Ross filed a timely notice of appeal on May 31, 2019, asking us to vacate his conviction for possession of a tool to remove a theft detection device in violation of Iowa Code section 714.7B(3) because he received ineffective assistance of counsel when he pled guilty to this charge without a factual basis to support it. We retained Ross's appeal.

## II. Standard of Review.

Ross concedes that he failed to file a motion in arrest of judgment in order to preserve error on his challenge to the factual basis of his guilty plea. Consequently, Ross contends that his trial counsel was ineffective for allowing the district court to accept his guilty plea without a factual basis supporting his charge of possession of a tool to remove a theft detection device and for failing to file a motion in arrest of judgment after the district court accepted his plea. Ineffective-assistance claims are rooted in the Sixth Amendment of the United States Constitution and article I, section 10 of the Iowa Constitution. *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019). We may decide such claims on direct appeal if the appeal was already pending on July 1, 2019, when Senate File 589

---

plea is voluntarily and intelligently tendered, and that the court finds there is a factual basis for the plea." *State v. Sutton*, 853 N.W.2d 284, 294 (Iowa 2014).

eliminating the ability to pursue ineffective-assistance claims on direct appeal, took effect, *see State v. Macke* 933 N.W.2d 226, 231–232 (Iowa 2019), and the record is adequate to warrant a ruling, *see Brown*, 930 N.W.2d at 844. Here, Ross's challenge is properly before us on direct appeal because he filed his notice of appeal on May 31, 2019, and we agree with both parties that the record is adequate to warrant a ruling. Our review is de novo for claims that the defendant's guilty plea was due to trial counsel's ineffective assistance. *State v. Nall*, 894 N.W.2d 514, 517 (Iowa 2017).

**III. Analysis.**

Ross claims his trial counsel rendered ineffective assistance by allowing him to plead guilty to possession of a "tool, instrument, or device with the intent to use it in the unlawful removal of a theft detection device," a serious misdemeanor, in violation of section 714.7B(3). Iowa Code § 714.7B(3). To succeed on his ineffective-assistance claim, Ross "must prove (1) counsel failed to perform an essential duty and (2) prejudice resulted." *Brown*, 930 N.W.2d at 855. Counsel fails to perform an essential duty when he or she allows the defendant to plead guilty to a charge for which a factual basis does not exist. *Nall*, 894 N.W.2d at 525. "Prejudice is inherent in such a case." *Id.* (quoting *State v. Gines*, 844 N.W.2d 437, 441 (Iowa 2014)). The success of Ross's argument hinges on whether the combination of the padlock and steel cable used to secure the riding lawn mower on display outside of the Mills Fleet Farm constitutes a "theft detection device" under section 714.7B(3).

Section 714.7B(3) criminalizes the possession of "any tool, instrument, or device with the intent to use it in the unlawful removal of a theft detection device." Iowa Code § 714.7B(3). Section 714.7B(4) defines "theft detection device" as "any electronic or other device attached to

goods, wares, or merchandise on display or for sale by a merchant." *Id.* § 714.7B(4). Ross maintains that the padlock and steel cable combination wrapped around the riding lawn mower does not fit this definition of a "theft detection device" because it did not serve any clear theft detection function and served only to prevent or deter thefts.

According to Ross, interpreting the definition of "theft detection device" broadly to include the combination at issue would lead to absurdity and render the words "theft" and "detection" meaningless. In contrast, the State believes a "theft detection device" simply has to be something "attached" to any item on display or for sale regardless of whether it will immediately alert the owner to the property theft. Therefore, we must resolve the conflicting theories of "theft detection device" in order to determine whether a factual basis supported Ross's guilty plea.

"The first step in our statutory interpretation analysis is to determine whether the statute is ambiguous." *State v. Coleman*, 907 N.W.2d 124, 135 (Iowa 2018). If the statutory language is unambiguous, our examination of the statute ends with the plain language. *Id.* But

> "if reasonable minds could differ or be uncertain as to the meaning of the statute" based on the context of the statute, the statute is ambiguous and requires us to rely on principles of statutory construction to resolve the ambiguity.

*Id.* (quoting *State v. Iowa Dist. Ct.*, 889 N.W.2d 467, 471 (Iowa 2017)). As noted above, the legislature's definition of "theft detection device" presents at least two differing yet reasonable interpretations: Ross's interpretation that the device must clearly detect and indicate that an item has been stolen and the State's interpretation that a theft detection device is anything "attached" to an item on display or for sale, regardless of whether it immediately detects theft. Consequently, the statute is ambiguous because both of these interpretations are reasonable, and we must rely on

our tools of statutory construction to determine the meaning of "theft detection device" under Iowa Code section 714.7B.

While we apply the rule of lenity in criminal cases, we still must construe criminal statutes "reasonably and in such a way as to not defeat their plain purpose." *Coleman*, 907 N.W.2d at 136 (quoting *State v. Hagen*, 840 N.W.2d 140, 146 (Iowa 2013)). Our goal in interpreting criminal statutes "is to ascertain legislative intent in order, if possible, to give it effect." *Id.* (quoting *State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008)). In doing so, we examine the legislature's chosen statutory language, "not what it should or might have said." *Auen v. Alcoholic Beverages Div.*, 679 N.W.2d 588, 590 (Iowa 2004). Moreover, if the statute does not define a word or use it with an established meaning, we give the words their "ordinary and common meaning by considering the context within which they are used." *Id.* It is not for us to "extend, enlarge, or otherwise change the meaning of a statute." *Id.* Finally, "[a]lthough the title of a statute cannot limit the plain meaning of the text, it can be considered in determining legislative intent." *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004) (quoting *T & K Roofing Co. v. Iowa Dep't of Educ.*, 593 N.W.2d 159, 163 (Iowa 1999)).

Here, it's clear from the statute's plain language and its title—"Theft detection devices—shield or removal prohibited"—that its purpose is to prohibit people from using theft detection shielding devices or removing theft detection devices. Iowa Code § 714.7B. The legislature chose to broadly define "theft detection device" as "any electronic or other device attached to goods, wares, or merchandise on display or for sale for merchant." *Id.* § 714.7B(4). Yet, we must consider this broad definition within the narrower context of the statute that it is used to prohibit the removal of theft detection devices and the use of theft-shielding devices to

determine whether the padlock-steel cable combination that Ross cut with bolt cutters is a "theft detection device." *See Auen*, 679 N.W.2d at 590.

The State emphasizes the word "device" and quotes the online Merriam-Webster definition of it as "a piece of equipment or a mechanism designed to serve a special purpose or perform a special function" to support its argument that the padlock-steel cable combination is a "theft detection device" under section 714.7B. *Device, Merriam-Webster*, https://www.merriam-webster.com/dictionary/device [https://perma.cc/8ZPS-HKJR]. However, as Ross points out, virtually any item, including a price tag, could be considered a "theft detection device" under section 714.7B(4). Interpreting the term by focusing on whether something is simply a "device" would render the words "theft detection" meaningless and ignore the statute's focus on theft detection devices and shielding devices that could be used to prevent theft detection. Accordingly, we need to examine whether the padlock-steel cable combination at issue detects theft in order to construe section 714.7B "reasonably and in such a way as to not defeat [its] plain purpose." *Coleman*, 907 N.W.2d at 136 (quoting *Hagen*, 840 N.W.2d at 146).

The statute says, "'*Theft detection device*' means any electronic or other device attached to goods, wares, or merchandise on display or for sale by a merchant." Iowa Code § 714.7B(4). The phrase "electronic or other device" is ambiguous, which should prompt us to examine the term being defined. As we have said,

> [t]he legislature is, of course, entitled to act as its own lexicographer, and in this case it did so. However, when the legislative definition of a term itself contains ambiguity, we should hesitate before veering too far from the common meaning of that term.

*Porter v. Harden*, 891 N.W.2d 420, 427 (Iowa 2017) (citation omitted). Further, as Scalia and Garner explain in their treatise, "the word being defined is the most significant element of the definition's context. The normal sense of that word and its associations bear significantly on the meaning of ambiguous words or phrases in the definition." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 232 (2012).

The dictionary defines "detect" as "to discover or determine the existence, presence, or fact of." *Detect, Webster's Third New International Dictionary* (unabr. ed. 2002); *see also Jack v. P & A Farms, Ltd.*, 822 N.W.2d 511, 516 (Iowa 2012) ("If the legislature has not defined words of a statute, we may refer to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 571 (Iowa 2002))). Here, the padlock-steel cable combination that Ross cut did nothing to detect or determine that Ross was committing theft, as it did not alert anyone to Ross's actions in removing the combination or loading the lawn mower into a rental truck to leave with it. A substantial period of time could have gone by before the Mills Fleet Farm even noticed that the lawn mower was missing if the store employee had not witnessed Ross and Lacey loading the lawn mower into their rental truck while he was arriving to work. It was the store employee—not the padlock-steel cable combination—who detected any theft. Ultimately, we agree with Ross that the padlock-steel cable combination around the riding lawn mower was a theft *prevention* device, not a theft *detection* device. Nothing in section 714.7B prohibits a person from possessing a tool with the intent to use it to unlawfully remove a theft prevention device.

The statutory definition of "theft detection shielding device" within the same subsection as the definition of "theft detection device" further supports our holding emphasizing the need for a detection function in a "theft detection device." Specifically, section 714.7B(4) states that a "theft detection shielding device" is any device "designed to shield merchandise from *detection* by an electronic or magnetic theft alarm system or any other system *designed to alert a person of a possible theft*." Iowa Code § 714.7B(4) (emphasis added). Consistent with our canon of construction *noscitur a sociis*, we read words in context rather than in isolation. *Peak v. Adams*, 799 N.W.2d 535, 547 (Iowa 2011). This canon "summarizes the rule of both language and law that the meanings of particular words may be indicated or controlled by associated words." *Id.* (quoting 11 Richard A. Lord, *Williston on Contracts* § 32:6, at 432 (4th ed. 1999)). Simply put, "words of a feather flock together." Hugh Pattison Macmillan, Rt. Hon. Lord, *Law and Language*, Presidential Address to the Holdsworth Club (May 15, 1931). That is, the "device" must be a theft detection device, not just any device attached to merchandise.

If the legislature had intended to include devices that only served to prevent—and not detect—theft within the meaning of "theft detection device" in section 714.7B, it could have expressly stated so as other states have done. *See* Miss. Code Ann. § 97-23-93.1(1)(*a*) (West, Westlaw through 2019 Reg. Sess.) (defining "theft detection device" as "any tag or other device that is used to prevent or detect theft and that is attached to merchandise held for resale by a merchant or to property of a merchant"); W. Va. Code Ann. § 61-3A-4A(a)(1) (West, Westlaw through chs. 1-60 through Mar. 12, 2020 Reg. Sess.) (same); Wis. Stat. Ann. § 943.50(1) (West, Westlaw through 2019 Act 76) (same). Nevertheless, the legislature did not incorporate any sort of prohibition against removing theft prevention

devices. It is not for us to enlarge the statute based on what the legislature might have said. *Auen*, 679 N.W.2d at 590. A "theft detection device" under section 714.7B must *detect* theft instead of simply trying to *prevent* it.

For these reasons, we agree with Ross that the padlock-steel cable combination he cut with bolt cutters did not constitute a "theft detection device" under section 714.7B. Therefore, there was not a factual basis to support Ross's guilty plea based on the record before us. Ross's trial counsel was ineffective for allowing Ross to plead guilty to possessing a tool with the intent to use it in the unlawful removal of a theft detection device in violation of section 714.7B(3) and for failing to file a motion in arrest of judgment after the district court accepted his plea. *See Nall*, 894 N.W.2d at 525 (explaining counsel fails to perform an essential duty and prejudice is inherent when counsel allows a defendant to plead guilty to a charge that is not supported by a factual basis).

As we have explained before, there are two possible remedies when the record does not contain a factual basis to support a guilty plea. First, "[w]here the record establishes that the defendant was charged with the wrong crime, we have vacated the judgment of conviction and sentence and remanded for dismissal of the charge." *State v. Schminkey*, 597 N.W.2d 785, 792 (Iowa 1999). Second, where "it is possible that a factual basis could be shown, it is more appropriate merely to vacate the sentence and remand for further proceedings to give the State an opportunity to establish a factual basis." *Id.* In this case, we do not see a possibility of establishing a factual basis on remand. *See Nall*, 894 N.W.2d at 525. Accordingly, we vacate the guilty plea to Iowa Code section 714.7B(3) and remand for further proceedings. On remand, the State has the option of withdrawing from the plea agreement and reinstating any charges it previously

dismissed. *See Yocum v. State*, 891 N.W.2d 418, 419 (Iowa 2017) (per curiam).

**IV. Conclusion.**

For these reasons, we vacate the sentence of the district court and remand for further proceedings consistent with  this opinion.

**SENTENCE VACATED AND CASE REMANDED FOR FURTHER PROCEEDINGS.**